43 N.Y.2d 184 (1977)
In the Matter of the Arbitration between American Insurance Company, Respondent, and Philip Messinger et al., Respondents.
Aetna Casualty and Surety Company, Appellant.
Court of Appeals of the State of New York.
Argued September 1, 1977.
Decided November 22, 1977.
Joseph D. Ahearn and J. Robert Morris for appellant.
Howard Lester and Patrick A. Lyons for American Insurance Company, respondent.
William F. Larkin for Committee on Insurance Arbitration, amicus curiae.
Chief Judge BREITEL and Judges JASEN and WACHTLER concur with Judge JONES; Judge GABRIELLI dissents and votes to reverse in a separate opinion in which Judges FUCHSBERG and COOKE concur.
*187 JONES, J.
We hold that the determination made in a property damage arbitration proceeding between two insurance carriers disallowing the disclaimer of coverage by one of them is binding in a controversy between the same carriers in a subsequent personal injury action arising out of the same accident.
The relevant facts for the purposes of this appeal are not disputed. On May 31, 1972 Mr. and Mrs. Messinger were injured when the automobile owned and driven by him in which she was a passenger was struck in the rear by a vehicle owned by Gerald Zook and driven by Thomas Nobles. The Messingers commenced an action against Zook and Nobles to recover for personal injuries. On August 10, 1973 Aetna Casualty and Surety Company, insurer for Zook, disclaimed on the grounds of late notice and lack of co-operation.
On August 1, 1973 American Insurance Company, carrier for the Messingers, pursuant to the Nationwide Inter-Company Arbitration Agreement, requested arbitration of its claim for subrogation with respect to the payment of $4,704.51 which it had made to its insured on account of property damage to the Messinger automobile incurred in the May 31 accident. Aetna objected to the arbitration on the ground that its insured had not complied with the cooperation provision of its policy. The arbitration proceeded to award on January 11, 1974 in which the three-member panel rejected the disclaimer *188 and assessed damages against Aetna in the amount of $1,201.12.
On June 13, 1974 the Messingers made a demand for uninsured motorist arbitration against their insurer, American, based on Aetna's asserted disclaimer of coverage. On September 10, 1974 Special Term granted American's motion to stay the Messinger arbitration pending trial in the personal injury action of the preliminary issue as to the merit of Aetna's disclaimer.
American then moved in the personal injury action to strike Aetna's disclaimer and for summary judgment directing Aetna to afford coverage to Zook. American based its motion on the ground that the determination with respect to the disclaimer issue in the January 11, 1974 arbitration award relative to the subrogation claim  in favor of American and adverse to Aetna  was binding in the personal injury action. Special Term granted American's motion, struck the asserted disclaimer and directed Aetna to defend on behalf of its insured Zook. Special Term also treated American's motion as an application to confirm the award in the property damage arbitration and confirmed the award which had originally held Aetna's disclaimer invalid. The Appellate Division unanimously affirmed and granted leave to appeal to our court. In our turn we now affirm the dispositions below.
In an unusual development, in our court respondent American, which had prevailed in both courts below, has now joined with appellant Aetna to urge that the order of the Appellate Division be reversed (with support in an amicus curiae brief filed on behalf of the Committee on Insurance Arbitration).[1] It is asserted that to hold that the determination in the property damage subrogation claim arbitration proceeding is binding in the subsequent personal injury action will be to endanger the entire intercompany arbitration system on which the insurance industry relies so heavily for efficient disposition of internal controversies. In a joint supplemental brief, the two insurance company litigants state: "The inter-company arbitration proceedings, such as the one in the present case, are *189 now firmly embedded in the insurance industry in New York State. These proceedings were intended by the industry to provide an informal procedure whereby disputes which concerned the insurance industry solely could be resolved by carriers pursuant to the procedures voluntarily established by the industry. As a result of such proceedings, the insurance industry, therefore, was able to resolve disputes which otherwise would have been forced into the court system with a resultant increase in court congestion coupled with substantial increase in the cost of disposing of minor claims. These proceedings, as intended by the industry and as applied by the carriers who were signatories to the agreement, have long had the salutary effect of alleviating court congestion in New York State. The inter-company arbitration determinations have handled in an expeditious and informal manner disputes existing between carriers, with no recourse had to the courts. An affirmance herein would mean that the utilization of intercompany arbitration panels would be potentially decreased materially (and the litigation in connection therewith forced upon the courts)."
Fundamental to our consideration of the present appeal is recognition that in general the doctrines of claim preclusion and issue preclusion between the same parties (more familiarly referred to as res judicata or direct estoppel)[2] apply as well to awards in arbitration as they do to adjudications in *190 judicial proceedings (Rembrandt Inds. v Hodges Int., 38 N.Y.2d 502; New York Lbr. & Wood Working Co v Schneider, 119 N.Y. 475; Wiberly v Matthews, 91 N.Y. 648; 23 Carmody-Wait 2d, NY Prac, Arbitration, § 141:151, p 80).
Next we observe that the question presented must be resolved under principles of issue preclusion between the same parties. That is to say, the question now before us is the effect to be accorded the determination with respect to a particular issue made in a proceeding between two parties when the same issue is raised in a subsequent proceeding between the same two parties. This is not an instance of issue preclusion in subsequent litigation between different parties, in which the question would be the effect to be accorded a prior determination when the same issue arises in a subsequent proceeding to which one of the former litigants is a party but where the adversaries in the second proceeding are not the same as those in the first proceeding. Therefore our decisions in Schwartz v Public Administrator of County of Bronx (24 N.Y.2d 65) and B. R. DeWitt, Inc. v Hall (19 N.Y.2d 141) are not on point. In each of those cases the question was whether one of two parties to the trial of the personal injury aspect of an automobile accident which was first litigated would later be bound by, i.e., precluded from relitigating, a determination therein adverse to it when the same issue was raised in a subsequent action for property damage brought against one of the prior litigants but involving different adversaries. No case has been brought to our attention in which our court has applied the Schwartz analysis and principles to situations of issue preclusion between the same parties, and we do not do so now.
We turn then to the several contentions urged by the parties as grounds for reversal of the determinations below that in the present personal injury action Aetna is bound by the rejection in the property damage arbitration of its right to disclaim and thus is precluded from relitigating that issue. For the purposes of our analysis and disposition these contentions can be grouped in four categories. The first relates to assertions of error committed in the arbitration proceeding. Thus, it is stated that under the express terms of the Nationwide Inter-Company Arbitration Agreement, arbitration of a controversy thereunder "must be deferred until all companion claims or suits not subject to arbitration have been disposed of by settlement or otherwise, except that all parties to the *191 arbitration may agree to waive deferment". In this instance it is obvious that the personal injury claims had not been disposed of and thus the statement in American's demand for arbitration that no companion claims or suits were pending was wholly inaccurate. It is asserted that inasmuch as the parties proceeded to arbitration under a mutual mistake of fact and there was no waiver of deferment, the arbitration award was invalid and should not be given any effect for present purposes. The response is clear. Whether or not there is merit to the contentions that it was error to have proceeded to arbitration or that there was no valid agreement to arbitrate, such issues present questions which either must be raised as threshold questions under CPLR 7503 (subd [b]) or are for the arbitrator in the arbitration proceeding. (Matter of Aaacon Auto Transp. [State Farm Mut. Auto. Ins. Co.], 41 N.Y.2d 951, 951-952; Pearl St. Dev. Corp. v Conduit & Foundation Corp., 41 N.Y.2d 167, 170-171; Aetna Life & Cas. Co. v Stekardis, 34 N.Y.2d 182, 185-186.) Errors in the arbitration proceeding, whether of fact or law, are beyond the scope of judicial review and clearly may not now be raised in this subsequent judicial proceeding. (Matter of Wolff & Munier [Diesel Constr. Co.], 36 N.Y.2d 750, 752; Matter of Raisler Corp. [New York City Housing Auth.], 32 N.Y.2d 274, 279.)
Next, our attention is drawn to what it is argued are the several substantial infirmities and deficiencies in the arbitration proceeding, very much along the lines of a Schwartz analysis. Thus it is pointed out that the arbitration proceeding was a summary, pro forma proceeding at best. The two companies merely sent the arbitrators their files; there was no hearing and no oral testimony or other documentary proof; there was no oral argument and no briefs were filed. The award itself was brief, almost cursory. To these contentions the response is twofold. First, the voluntary choice of the arbitration forum necessarily imports acceptance of the more summary, informal and less structured procedures which characterize arbitration as compared with judicial litigation. Second, to the extent that this particular arbitration was even more informal and casual than most, there is nothing to suggest that this was not the consequence of the voluntary election by two insurance companies to proceed as they did. They must be held to have waived any procedural rights which they might otherwise have had and to have accepted the arbitration proceeding as they chose to conduct it. (Cf. *192 CPLR 7506, subd [f].) Even under Schwartz the requirement is only that there have been a "full and fair opportunity to contest the decision now said to be controlling" (24 N.Y.2d 65, 71; emphasis supplied), not that there have in fact been a full and fair contest.
In another Schwartz-type argument it is asserted that Aetna had no real incentive to press a vigorous disclaimer defense in the property damage litigation. Our attention is drawn to the relative disparity in amount between the property damage and the personal injury claims. The suggestion is that because Aetna may not have really tried in the first arbitration it should not be bound by the resulting award. This, too, is an unpersuasive and unattractive argument in a situation of issue preclusion between the same parties. We cannot visualize acceptance, for instance, of the conceptually parallel argument that a party against whom partial summary judgment has been granted in one action should be relieved of its consequences in a second action between the same parties because, lacking incentive in the first action, that party put up only a halfhearted defense and submitted nothing but its file and an incomplete or even sloppy affidavit in opposition to the motion. The consequences of issue preclusion between the same parties are not to be vitiated by lack of enthusiasm or effort on the part of the loser. (But cf. Restatement, Judgments 2d, § 68.1, subd [e], par [iii].)
On still another tack the parties jointly assert that there is no affirmative evidence to prove that they ever intended that the award in arbitration should have an estoppel effect in any subsequent litigation between them. By like token and more significant, however, there is no evidence to establish that they manifested an intention, let alone agreed, that there be no such consequence. The doctrines of claim preclusion and issue preclusion do not depend on any manifested or presumed intention of the parties; they rest on the desirability in the public interest of judicial repose and of the orderly termination of controversy. "The common-law doctrine of res judicata, designed to bar relitigation of adjudicated issues, is the law's recognition of the fact that it is to the interest of the State that there should be an end to litigation" (Israel v Wood Dolson Co., 1 N.Y.2d 116, 118; Matter of New York State Labor Relations Bd. v Holland Laundry, 294 N.Y. 480, 493-494; see 9 Carmody-Wait 2d, NY Prac, Judgments, § 63:197, p 198). We do not say that an understanding to limit estoppel consequences, *193 if established by the evidence, preferably unequivocal, may not serve to restrict or modify what would otherwise be the applicable rule. It will not suffice, however, to urge by way of afterthought that the parties never intended a subsequently binding effect. In this instance there was here no tender of any proof of an intention not to be bound, and evidence of intention to be bound has never been a prerequisite to the application of issue or claim preclusion.[3]
In reaching the decision we do, we acknowledge our awareness of the earnest and sincere apprehension on the part of both insurance companies and of the amicus that an affirmance will disrupt an effective and widespread system of arbitration under the Nationwide Inter-Company Arbitration Agreement and throw back a multitude of relatively small claims on our already crowded court calendars. We suggest that if this is a real risk, and we have no reason to doubt that it is, the remedy is available and practicable. We have noted elsewhere that voluntary arbitration is grounded in the agreement of the parties (County of Sullivan v Edward L. Nezelek, Inc., 42 N.Y.2d 123, 128). The longer term solution, consistent with the principles both of arbitration law and of claim and issue preclusion, is to insert an appropriate provision in the master arbitration contract that awards made thereunder shall be for the purposes of the dispute submitted only and shall have no carry-over effect. In the shorter run, pending the execution of such an amendment to the master agreement, appropriate clauses of similar limitation may be included in all future submissions under the present arbitration agreement, and postaward limiting agreements may be executed with respect to outstanding awards. The classic method for limiting the scope and effect of agreements to arbitrate, as we so frequently both caution and hold, is for the parties themselves to include the desired limitations in their own arbitration *194 agreements or submissions (e.g., Stanley & Son v Trustees of Hackley School, 42 N.Y.2d 436, 438-439).
One final, general observation is pertinent. It has been suggested that in the range of procedures for dispute-resolution, there is a place for a very informal, quick means for reaching a decision when one or perhaps both contestants are prepared, or even desire, to make an abbreviated submission with little or no real contest. The argument is made that opportunity for such summary dispositions should not be inhibited by automatically according a binding estoppel effect to the first determination when the same issue later arises in a second controversy. It is said that Schwartz reflects a judicial awareness that in circumstances arising exclusively in the setting of judicial proceedings it is not always fair to hold a litigant to a prior adverse determination and that the principles enunciated in that case provide the possibility of avoidance of such estoppel when manifest fairness calls for it. In circumstances involving arbitration, however, the parties themselves can formulate their own contractual restrictions on carry-over estoppel effect. They cannot, of course, impose similar limitations which would impair or diminish the rights of third persons. In this sense there is a real difference between situations of issue preclusion between the same parties and issue preclusion between different parties.
For the reasons stated, the order of the Appellate Division should be affirmed, without costs.
GABRIELLI, J. (dissenting).
I respectfully dissent from the majority decision.
Respondent-appellant Aetna Casualty and Surety Co. appeals from an order of the Appellate Division, First Department, which affirmed a judgment of Supreme Court, New York County. The order appealed from strikes Aetna's allegation of disclaimer of coverage, and orders Aetna to appear and defend in an action for personal injuries instituted by American's insureds, the Messingers, against Aetna's insured, Zook.
To place the present controversy in proper perspective, it is important to here note, and indeed to emphasize, that this personal injury action, arising from an automobile collision, was instituted by the insured owners and the operator of one vehicle against the insured owner of another vehicle involved in the accident; and that this action was begun prior to the commencement of an arbitration proceeding, involving only a *195 property damage claim, which was strictly between the two insurers; and that the insureds were not only not parties to this subsequent arbitration, but that they in no way participated, directly or indirectly, in that proceeding. In fact, there is no evidence that they were even aware of its existence.
The facts, although complex, are undisputed. On May 31, 1972, the Messingers were involved in an automobile accident with a car owned by Zook; soon thereafter, they commenced an action against Zook to recover for personal injuries. Aetna, Zook's insurance company, was not notified of the action until April 23, 1973, and on August 10, 1973, Aetna disclaimed on the grounds of late notice and lack of cooperation. In the interim, American had paid their insureds, the Messingers, $4,704.51 for property damage to their automobile, and on August 1, 1973 had requested arbitration against Aetna seeking to recover this sum as subrogee. The arbitration request was made and the arbitration conducted pursuant to the Nationwide Inter-Company Arbitration Agreement. Aetna objected to arbitration on September 26, 1973, on the ground that its insured had not complied with the co-operation provisions of the policy.
It should be noted that this arbitration was between the insurers only, and none of the insureds were considered to be in any way interested in the outcome. The arbitration itself was a very simple process; the two companies merely sent the arbitrators their files. These files are not in the record, and it appears that they are not in fact retained after the arbitration. Thus, there is apparently no way of determining what material was before the arbitrators. It is important to note that there was no hearing. On January 11, 1974, the panel rendered a decision, stating simply: "Questions of coverage considered. Applicant sustained burden of proof against [Aetna] in amount of $1,201.12".
On June 13, 1974, the Messingers made a demand against American for uninsured motorist arbitration with respect to their personal injury claims because of the August 10, 1973 disclaimer by Aetna. American successfully sought a stay of arbitration in order to challenge the disclaimer, and subsequently obtained a judgment striking the disclaimer by virtue of the collateral estoppel effect of the arbitration decision. This appeal is taken from the Appellate Division's affirmance of that judgment, by leave of that court.
Although it is certainly not dispositive, it should be noted *196 that neither party now seeks affirmance. Apparently influenced by the allegedly destructive impact of an affirmance upon the complex system of arbitration utilized by the insurance industry, both insurance companies and the Committee on Insurance Arbitration now urge reversal.
Preliminarily, I take issue with the majority's attempt to avoid application of the principles enunciated by this court in Schwartz v Public Administrator of County of Bronx (24 N.Y.2d 65), by limiting the discussion in Schwartz to situations wherein the parties to both actions are not the same. The unfortunate result of today's decision will be to disturb the uniform theory of res judicata and collateral estoppel which we perfected in that case. It should be noted that whether one uses the traditional terminology or the new nomenclature utilized in the tentative drafts of the Restatement, Judgments (2d), the concepts remain unchanged. Traditionally, collateral estoppel has been considered as merely one category of res judicata, a type of partial res judicata. It is distinguished from full res judicata, not on the basis of the parties involved in the respective actions, but on the basis of the nature of the two actions. Res judicata is applicable to bar a subsequent action when a prior suit on the same cause of action has been finally determined on the merits: if the plaintiff has fully recovered, he is precluded from commencing another action by the doctrine of merger; if the defendant has prevailed on the merits, the plaintiff is precluded from commencing another suit by the doctrine of bar. Collateral estoppel, or partial res judicata, precludes relitigation in subsequent actions of questions actually litigated and determined in a prior suit, even if that prior suit was based on a different cause of action. Direct estoppel, in contradistinction, is applicable to prevent relitigation of previously determined questions in situations where the prior judgment itself was not on the merits.[*] The effect of the new Restatement is simply to recast these familiar concepts in a new terminology. Thus, section 45 distinguishes between bar and merger on the one hand (claim preclusion or res judicata), and issue preclusion (collateral estoppel) on the other. Direct estoppel has apparently been subsumed within *197 the concept of issue preclusion. In the present case, it is clear that we are faced with what has traditionally been considered a question of collateral estoppel, and what may now be termed a question of issue preclusion: that is, the effect, in a personal injury action between two insureds, of a determination in a prior property damage arbitration proceeding between their respective insurers, that a disclaimer of coverage is ineffective.
In refusing to apply the Schwartz criteria on the ground that in that case the parties to the two actions were not both the same whereas in the present case they are, the court misstates the significance of Schwartz. There, we were not concerned with developing a new classification of res judicata or collateral estoppel applicable only in cases where someone not a party to a prior action attempts to preclude relitigation of an issue already determined in that prior action; rather, we were simply extending the normal principles of res judicata and collateral estoppel to such situations. Thus, our discussion of the criteria for applying res judicata or collateral estoppel was not limited to the Schwartz fact pattern, but was, to the contrary, an exposition of basic principles. Indeed, we declared therein that the effect of our decision would be that "New York law will have arrived at a modern and stable statement of the law of res judicata" (Schwartz, supra, p 69).
Today's decision, in contrast, heralds the disruption of that system. It apparently holds that the analysis and principles used in determining whether collateral estoppel is applicable will vary depending on whether the parties to the two actions are the same. This is an abrupt departure from precedent, which, until today, betokened an increasing reliance solely on the question whether the party against whom the estoppel is sought to be used has had "a full and fair opportunity to contest" the prior decision (see Schwartz, supra, p 71; B. R. DeWitt, Inc. v Hall, 19 N.Y.2d 141, 145-146; Good Health Dairy Prods. Corp. v Emery, 275 N.Y. 14, 18; Liberty Mut. Ins. Co. v Colon & Co., 260 N.Y. 305, 312). This is not to say, of course, that the identities of and relationships between the parties are not to be considered in determining whether the application of issue preclusion is appropriate. As I will discuss below, these are very important factors in that determination; nonetheless, they are not dispositive, but are only some among many factors. Above all, although the result of this determination may in certain cases vary as a result of the relationship between the parties, the analysis and principles to be utilized *198 in arriving at that result certainly should not so vary. Therefore, in the hope that today's decision is but a temporary aberration, and that the court will soon return to the stable system we have developed in prior cases, I will discuss the present case within the framework of a uniform theory of collateral estoppel or issue preclusion.
As I mentioned above, the seminal New York decision concerning collateral estoppel is Schwartz v Public Administrator of County of Bronx (24 N.Y.2d 65, supra). There, this court held that a prior judgment in favor of a passenger against the drivers of two colliding automobiles gave rise to an estoppel which could be used by one driver to bar an action against him brought by the other. To reach this result, we specifically adopted "the full and fair opportunity test in applying the doctrine of collateral estoppel" (id., p 71). That test was described as follows (p 72): "A decision whether or not the plaintiff drivers had a full and fair opportunity to establish their nonnegligence in the prior action requires an exploration of the various elements which make up the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation".
In the present case, the courts below held that Schwartz mandates application of collateral estoppel. I disagree. This is not to say that collateral estoppel is not normally applicable to arbitrations. The Schwartz rationale, however, comprehends a flexible approach to collateral estoppel, a balancing of the various factors enumerated above to determine whether the doctrine should be applied in a particular situation. In making this determination, moreover, it is necessary to consider the purpose of collateral estoppel  the prevention of repetitive litigation. "[C]are must be taken to restrict collateral estoppel to those situations in which the advantages to be derived from preventing relitigation will not be outweighed by the injustice that may result by foreclosing attack on prior determinations" (Developments in the Law-Res Judicata, 65 Harv L Rev 818, 840). Indeed, as we stated in Schwartz, "[n]o *199 one would contend that the doctrine of collateral estoppel should be applied rigidly" (Schwartz, supra, p 73).
Analysis of the present case in light of the Schwartz criteria leads to the conclusion that this is not such a situation as to warrant an estoppel. The first consideration is the size of the claims in the two proceedings. In this case, the prior arbitration concerned a property damage claim of under $5,000, whereas the personal injury action may subject the insurer to a much greater liability. In reaching our decision in Schwartz, we carefully noted that the prior action there "did not involve claims for property damage amounting to but a few hundred dollars so that there would be no assurance that there was a vigorous fight on the issue of liability" (Schwartz, supra, p 72). It appears that the present case is in fact that which was distinguished in Schwartz. Indeed, this is further indicated by consideration of another Schwartz factor, the possibility that the prior judgment was a compromise. The insurance arbitration scheme in the present case has all the earmarks of a plan aimed at achieving just such a compromise. This is exemplified by the award itself; instead of the $4,704.51 requested by American, and which it had presumably already paid to its insured, the arbitrators awarded the apparently arbitrary figure of $1,202.12.
The arbitration proceeding involved no hearing, no calling of witnesses (none of the insureds participated nor did they have notice of the hearing), no briefs, no argument by representatives of either side; rather, it constituted merely a perusal of the files of the two companies, files not in the record, and files which apparently are not maintained after the arbitration. The award itself is vague  it consists of the bald statement that "questions of coverage [were] considered" and the award of an amount which appears to have been drawn out of a magician's hat.
More significantly, it seems evident that it was not the intent of the parties to the arbitration agreement that it be given any collateral estoppel or res judicata effect other than with respect to the property damage award itself. The agreement is limited to property damage claims of under $5,000; by specific contract provision it is not to be utilized until all related claims or controversies are settled; again by contract, it does not involve the interests of the insureds at all, and they are not even parties to the arbitration. In view of these provisions, it appears clear that neither party intended any *200 estoppel effect. Rather, every effort was made to ensure that no opportunity for an estoppel would arise. Indeed, the property damage claim in the present case was actually submitted to the arbitrator erroneously: both insurance companies were under the mistaken belief that no other claim existed. American, the company which instituted the arbitration and which now seeks to give it collateral estoppel effect, incorrectly declared in its application for arbitration that no companion claims or other suits were pending. Certainly, the insured cannot be affected or bound by any error on their part. I shudder to think of possible collusion. There exists, moreover, another arbitration agreement specifically designed to provide a specialized forum for deciding whether a disclaimer is effective as between two insurance companies  the New York Uninsured Motorist Arbitration Agreement.
In interpreting an arbitration agreement, as in interpreting any contract, a court seeks to determine the intent of the parties as of the time they entered into the agreement. I believe this contract was carefully constructed so as to avoid the possibility of any unexpected collateral estoppel effect. Although the testimony of the parties as to what their intent was is not conclusive, it should nonetheless be considered if the intent is not clear from the face of the agreement. Here, I think the intent is clear. Even if the agreement is considered to be somewhat ambiguous, we have before us the statements of both parties and of the Committee on Insurance Arbitration, the body charged with interpreting and administering the agreement. All agree that the intent was to prevent estoppel from attaching. Under these circumstances, I do not think it would in any way limit Schwartz were we to find that no estoppel attached.
Indeed, to apply estoppel here does not further the purposes of the doctrine. Rather than preventing relitigation of issues already decided and the concomitant waste of both judicial effort and the time and money of the litigants, the effect of applying collateral estoppel here is to disrupt an effective and complex system of arbitration and thereby place upon the courts the additional burden of deciding innumerable disputes concerning small claims which are presently resolved via arbitration. Clearly, no insurance company will submit even a minor property damage claim to arbitration if it must fear that the results of that arbitration may return to haunt it in a subsequent personal injury action involving substantially *201 higher amounts. We are here dealing with a system which provides a means of settling small disputes expeditiously and inexpensively. I see no reason to chance destroying the effectiveness of this system. It should be noted that a reversal here would not undermine in any way the res judicata effect to be afforded arbitral awards, nor would it limit the collateral estoppel effect of an arbitration conducted under an agreement which does not clearly indicate an intent that no estoppel attach. Thus, I believe reversal is appropriate under these circumstances.
Conspicuously absent in the present appeal, and, indeed, in most of this dispute, are the parties around whom it revolves  the insureds. Since the majority has affirmed, all insureds will in effect win in this case: Aetna will be unable to disclaim, Zook is insured, and the Messingers need not fear the possibility of being limited to their uninsured motorist benefits. If we had reversed, Aetna would have had an opportunity to litigate fully the question of the effectiveness of its disclaimer by traditional evidentiary means in an appropriate forum. If the disclaimer were then invalidated, the result would have been the same as it now is; if, however, the disclaimer were determined to be effective, Zook would not be insured and the Messingers would effectively be limited to their uninsured motorist coverage, which may be as little as $10,000 (see Insurance Law, § 167, subd 2-a). It is obvious that the interests of the insureds and their insurers are inextricably entangled in this situation. They are at one and the same time united in some aspects and adverse with respect to others. Although we have soundly rejected the doctrine of mutuality of estoppel, characterizing it as "a dead letter" (B. R. DeWitt, Inc. v Hall, 19 N.Y.2d 141, 147, supra), this does not mean that we can simply ignore the complex relationship between the various parties in this case. What would have been the result had the arbitrators upheld the disclaimer? What will be the result if American seeks to give collateral estoppel effect not to the implicit finding that the disclaimer was ineffective, but rather to the equally implicit finding that Aetna's insured was responsible for the accident? This is not the typical arbitration, in which the parties to the arbitration are the real and sole parties in interest. It is rather an attempt to settle between the insurers the question of which company shall bear the burden of paying relatively minor property damage claims. It is an attempt to quickly resolve *202 those minor claims of which it could truly be said that it is more important to all concerned that they be soon resolved than that they be correctly resolved. To give such a determination a collateral estoppel effect in subsequent litigation of much greater import to the parties is to give it an effect and a significance never intended by the parties, and one which may substantially impair the effectiveness of a complex arbitration agreement encompassing some 600 insurance companies.
Accordingly, the order of the Appellate Division should be reversed, without costs.
Order affirmed.
NOTES
[1] The Committee on Insurance Arbitration describes itself as "the governing body authorized by over six hundred signatory insurance companies throughout the United States and its possessions to administer, set policy for and resolve questions of jurisdiction as to the several inter-company arbitration facilities conducted under its auspices. In addition to the Nationwide Inter-Company Arbitration Agreement involved in this appeal, the Committee operates twenty-two other arbitration forums."
[2] The terms "res judicata" and "direct" and "collateral estoppel" have been used with varying meanings in different contexts. It is thought that both analysis and exposition will be advanced by recourse to the terminology adopted by the Restatement, Judgments (2d). Thus, by "claim preclusion" it is intended to refer to situations in which one of the parties to a prior action or proceeding is foreclosed in a second action or proceeding between the same parties from relitigating a claim or cause of action (not infrequently involving several discrete issues) which was the subject matter of the prior action or proceeding (op. cit., §§ 41-61.2). "Issue preclusion" refers to discrete issues of fact or law rather than to claims or causes of action, and may arise in either of two situations:  where the parties are the same and one is barred from relitigating an issue which was adjudicated in the prior action or proceeding between them (op. cit., § 68); or where the parties are not the same but nonetheless one of the parties to the subsequent action or proceedings is foreclosed in the second from relitigating an issue which was determined in the first action or proceeding (op. cit., § 88). The case now before us presents an instance of issue preclusion between the same parties. That is, American and Aetna were adversaries in the arbitration proceeding involving the property damage claim in which one issue was Aetna's right to disclaim coverage. In the present, second action, in which Aetna and American are likewise adversaries but the claim is for personal injuries rather than for property damage, American seeks to preclude Aetna from relitigating the same issue  Aetna's right to disclaim coverage.
[3] In response to the concern expressed in the dissent for the interests of the insureds, we note that the Messingers (the only insureds whose economic interest may be involved) participated in the initial stages of the present litigation, but chose not to participate in the appeal in our court. Presumably they found the disposition at Special Term (affirmed at the Appellate Division and now by us) acceptable, perhaps preferring to look to the coverage afforded Zook by Aetna rather than to uninsured motorist coverage under their own policy. On the other hand had Aetna's right to disclaim been upheld in the original property damage subrogation arbitration, there is no reason to assume that the Messingers would later have been bound thereby, since they were not parties to the arbitration proceeding and had no opportunity to litigate the issue.
[*] Restatement of Judgments, § 45, Comments c, d; § 68. See Developments in the Law  Res Judicata, 65 Harv L Rev 818, 820, n 1; Rosenberg, Collateral Estoppel in New York, 44 St John's L Rev 165, 166; 9 Carmody-Wait 2d, NY Prac, Judgments, § 63:196, n 18; cf. Hinchey v Sellers, 7 N.Y.2d 287, 293-294; Commissioners of State Ins. Fund v Low, 3 N.Y.2d 590, 595-596.