OPINION OF THE COURT
Catterson, J.
At issue on this appeal is whether the defendant members of a law firm committed legal malpractice by not advising the plaintiff, Herbert Feinberg, that an agreement with his former business partner to limit the collateral estoppel effect of an arbitration award would have been enforceable in Feinberg’s lawsuit against a third party. As set forth in greater detail below, precedent, sparse as it is on this issue, nevertheless mandates that such limiting agreements are not carved-out exceptions to normal collateral estoppel principles. We therefore find that where, as here, an issue has been fully and vigorously litigated, no limiting agreement as to an arbitration award may bar the assertion of a collateral estoppel defense by a third party as to that issue.
We further find that the trial court erroneously denied the defendants’ motion for judgment notwithstanding the verdict on the basis that the enforceability of limiting agreements had already been determined against the defendants by this Court in 2005, and therefore constituted law of the case. First, this was an incomprehensible conclusion given that the same court essentially permitted the parties to “re-litigate” the issue by introducing expert testimony at trial on the enforceability of limiting agreements. More significantly, it underscored the court’s misunderstanding of the law of the case concept. The sole determination made by this Court in 2005 was that Supreme Court had properly granted Feinberg’s motion for leave to amend his complaint to plead sufficient facts in support of his claim that his former partner Katz would have been amenable to a limiting agreement. (Feinberg v Boros, 17 AD3d 275, 276 [1st Dept 2005].) In the context of deciding Feinberg’s motion, this Court rejected the defendants’ argument that as a matter of law limiting agreements cannot impose limitations on third parties. However, we never determined the ultimate claim that had Feinberg and his former partner entered into a limiting agreement, Feinberg “most likely” would have succeeded in enforcing the agreement against a third party. Hence, we never reached, nor could we have in the context of the limited appeal, the issue of the enforceability of limiting agreements.
*222 The following facts in this protracted litigation are established in the record as follows: Feinberg is the principal shareholder of I.A. Alliance, a women’s clothing manufacturer formerly known as I. Appel Corp. Defendant Jerome Boros was Feinberg’s chosen arbitrator in an underlying action, and represented Feinberg in subsequent settlement talks with Feinberg’s former business partner, Norman Katz.
Feinberg and Katz were equal partners in I. Appel for 20 years until 1996 when Feinberg decided to purchase Katz’s interest in I. Appel. The company’s 1995 financials were audited by the accounting firm of nonparty Mahoney Cohen Rashbart & Pokart, which provided Feinberg with accounting services on the Katz transaction.
In June 1996, Feinberg and Katz executed a purchase agreement, and Feinberg made a partial payment based upon the 1995 financials. Within 45 days of closing, Mahoney Cohen was to perform a new determination of value (hereinafter referred to as DOV), which would establish a final share price. The DOY however, was not timely prepared, and Katz sought to enjoin its completion, as well as to lock in the purchase agreement share price based upon the 1995 financials. The DOV was completed in October 1996 and revealed that the company’s “previously stated inventory values [were] grossly overstated resulting in a difference in net worth of approximately $10 million.”
In 1997, Feinberg commenced arbitration against Katz alleging fraud in connection with the 1995 financial statement and seeking, among other things, to rescind the purchase agreement. Feinberg asserted, inter alia, that he had detrimentally relied upon the 1995 financial statement when he made his decision to purchase Katz’s interest in the company. In December 1998, Feinberg sued Stephen Katz, Norman Katz’s son, who had also worked for I. Appel, also alleging fraud with respect to the 1995 financials.
On March 29, 1999, Stephen Katz moved for a stay pending the arbitration, arguing that a finding that Feinberg had not been misled by the 1995 financials would collaterally estop Feinberg from pursuing his claims against Stephen Katz. The court granted the stay.
On November 22, 1999, an arbitration award was rendered. The panel concluded, inter alia, that Feinberg had not relied upon the 1995 financials when making his decision to purchase Katz’s interest in I. Appel. On May 19, 2000, Feinberg commenced an action against Mahoney Cohen for accounting mal *223 practice. Mahoney Cohen moved for summary judgment on the ground that the claim was barred by the collateral estoppel effect of the arbitral finding that Feinberg had not relied on the 1995 financials. The motion was granted and affirmed on appeal. (I. Appel Corp. v Mahoney Cohen & Co., CPA, 294 AD2d 196 [1st Dept 2002].)
Feinberg then initiated this action against the defendants for legal malpractice. He alleged that the defendants failed to advise him that an amendment to the arbitral award, or a postaward agreement between him and Katz could have barred Mahoney Cohen’s collateral estoppel defense. He further contended that he and Katz would have reached such an agreement, and that consequently he would have prevailed in his malpractice suit against Mahoney Cohen.
The defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7), and the motion was granted on the grounds that Feinberg had failed to allege facts demonstrating that the defendants’ alleged negligence was the proximate cause of Feinberg’s damage. Feinberg moved to vacate the order, and for leave to amend the complaint.
Supreme Court granted the motion and this Court affirmed, finding that Feinberg’s amended pleading was sufficient to survive the defendants’ original CPLR 3211 (a) (7) motion. (17 AD3d at 276.) Subsequently, the defendants answered, denying Feinberg’s allegations and asserting a number of affirmative defenses.
At trial, Feinberg testified that on January 5, 2000, a couple of months after the award was rendered, Feinberg and Boros had met with Katz’s arbitrator. Katz’s arbitrator proposed that the parties enter into a postarbitration agreement to limit the collateral estoppel effect as it applied to Mahoney Cohen. Feinberg testified that after the meeting, he asked Boros to advise him concerning collateral estoppel, and whether a limiting agreement would protect his claims against Mahoney Cohen. Boros responded that he would ask his colleagues to look into the matter. However, neither Boros nor anyone else at the firm provided Feinberg with legal advice regarding collateral estoppel. By letter dated May 15, 2000, approximately seven days before the statute of limitations on Feinberg’s claims against Mahoney Cohen expired, the firm officially terminated its representation of Feinberg.
After the trial, a verdict was rendered in Feinberg’s favor, finding that the defendants committed malpractice. The jury *224 found that if the defendants had advised Feinberg that he could have executed a limiting agreement with Katz, he and Katz would have entered into such an agreement, and that it was likely that Mahoney Cohen would not then have succeeded in its collateral estoppel defense.
The defendants moved for a judgment notwithstanding the verdict (hereinafter referred to as JNOV), arguing that, inter alia, pursuant to the facts adduced at trial, a postaward limiting agreement between Feinberg and Katz would not have been effective to preclude Mahoney Cohen’s assertion of collateral estoppel.
The court denied the motion. (2011 NY Slip Op 31485[U] [2011].) It found that, in the 2005 decisions of Supreme Court and this Court, the “courts specifically stated and determined that defendants had not established, as a matter of law, that such a[ limiting] agreement would not have been effective.” (2011 NY Slip Op 31485[U], *9.) The court determined that the prior decisions were law of the case on the issue of whether a limiting agreement would have been effective or enforceable. This was error.
For the reasons set forth below, we reverse and grant the defendants’ motion for judgment notwithstanding the verdict. As a threshold matter, in determining whether law of the case applies, the procedural posture and evidentiary burdens of the litigants must be considered. (See e.g. 191 Chrystie LLC v Ledoux, 82 AD3d 681 [1st Dept 2011]; Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry, 128 AD2d 467 [1st Dept 1987] [denial of motion to dismiss does not establish law of the case because it looks only to the sufficiency of the pleadings].) Here, the procedural posture and evidentiary burdens of the parties at the time Feinberg moved to amend his complaint and at the time the defendants moved for JNOV were markedly different.
In this case, in 2005, the motion court found that the amended complaint cured the deficiencies of Feinberg’s earlier complaint by including “sufficient facts from which one can infer that Katz would have been amenable to an agreement limiting the estoppel effect of the arbitration award.” (Feinberg v Boros, 2004 WL 5641615 [Sup Ct, NY County 2004].) Thus, in rejecting the defendants’ argument that no postarbitral agreement could have been made to bar Mahoney Cohen’s defense, the motion court found only that an agreement between Feinberg and Katz could have been made and that “most likely” it would have prevented the dismissal of Feinberg’s suit against Ma- *225 honey Cohen. The motion court was clear about the preliminary and limited nature of the holding, finding that, “[a]t this early stage of the litigation, the Court cannot conclude, as a matter of law, that defendants were not negligent.” (Id.)
Our affirmance on appeal was similarly limited. We held that
“[fjrom the alleged facts, accepting them as true, according them the benefit of every possible favorable inference, and evaluating them only as to whether they fit within any cognizable legal theory, one could infer that plaintiffs former partner would have been amenable to an agreement limiting the estoppel effect of the arbitration award. Defendants have not established, as a matter of law, that even if plaintiff and Katz had entered into an agreement limiting the collateral estoppel effect of the arbitration award, the Mahoney Cohen lawsuit would nonetheless have been dismissed on collateral estoppel grounds.” (Feinberg, 17 AD3d at 276 [emphasis added], citing Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.], 43 NY2d 184 [1977]; accord Kerins v Prudential Prop. & Cas., 185 AD2d 403 [1992].)
It is axiomatic that a motion addressed to the face of a complaint, wherein the motion court must construe all facts in a light favorable to the plaintiff, cannot control the outcome of a case once the facts are finally determined, just as denial of a summary judgment motion on the grounds that the nonmovant has raised a triable issue of fact does not mean that the movant cannot prevail after the evidence has been considered by the trier of fact. (See Smith v Hooker Chem. & Plastics Corp., 125 AD2d 944 [4th Dept 1986], affd 70 NY2d 994 [1988]; see also Bukowski v Clarkson Univ., 86 AD3d 736, 739 [3d Dept 2011], affd 19 NY3d 353 [2012].)
Moreover, in this case, this Court did not reiterate the language of Supreme Court that the defendants here “cannot” establish that the limiting agreement would have been unenforceable against a third party. Instead, this Court held that the “[defendants have not established, as a matter of law,” that such an agreement would have been unenforceable. (17 AD3d at 276 [emphasis added].)
In other words, implicit in this Court’s decision was the recognition that the defendants had not yet so established; or had not so established at that stage of litigation. Finally, in the *226 absence of language indicating a determination by the Court that such an agreement would have been effective or enforceable, the 2005 decision may only be interpreted as leaving the issue open. In concluding, the Court stated its holding only as “[alccordingly, plaintiff’s proposed amended complaint sufficiently states a claim for legal malpractice.” (17 AD3d at 276.)
More significantly, the trial court erred in not setting aside the jury verdict pursuant to CPLR 4404 (a) because the defendants were entitled to judgment as a matter of law. Facts developed at trial were used in conjunction with the testimony of legal experts to guide the jury to what amounts to a legal conclusion as to whether a limiting agreement would have been enforceable or effective against Mahoney Cohen. However, that question is indisputably one of law not fact, and should have been decided by the court in favor of the defendants.
It is well established that the doctrine of collateral estoppel bars a litigant from disputing an issue in another proceeding when that issue was decided against the litigant in a proceeding in which he had a “full and fair opportunity” to contest the matter. (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 71 [1969].) Collateral estoppel preserves party and judicial resources by preventing relitigation of matters that have already been resolved. Further, it prevents inconsistent results. (24 NY2d at 74.) Collateral estoppel can be asserted in a new case by a nonparty to the original proceeding. (B. R. DeWitt, Inc. v Hall, 19 NY2d 141, 147 [1967].) Moreover, collateral estoppel principles “apply as well to awards in arbitration as they do to adjudications in judicial proceedings.” (Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.], 43 NY2d 184, 189-190 [1977], citing Rembrandt Indus. v Hodges Intl., 38 NY2d 502 [1976].)
Confusion has arisen in this case because the Messinger Court also held, seemingly inconsistently, that “[i]n circumstances involving arbitration, . . . the parties themselves can formulate their own contractual restrictions on carry-over estoppel effect.” (Messinger, 43 NY2d at 194.) On closer analysis, however, it is clear that the confusion is not warranted.
The ability of parties to formulate their own contractual restrictions as to the estoppel effect of arbitration awards is not, in reality, a carved-out exception to normal collateral estoppel principles. The idea of entering into a contractual limitation was established by the Messinger Court in the context of a dispute arising from an arbitration between insurance carriers. *227 (Messinger, 43 NY2d at 187.) The Court recognized that arbitration hearings may be “summary, pro forma proceeding^] ” and that the opportunity “for . . . summary dispositions should not be inhibited by automatically according a binding estoppel effect to the first determination.” (Messinger, 43 NY2d at 194.) Hence, the Court concluded that in arbitration “the parties themselves can formulate their own contractual restrictions on carry-over estoppel effect.” (43 NY2d at 194.) However, the Court cautioned that “[t]hey cannot, of course, impose similar limitations which would impair or diminish the rights of third persons.” (Messinger, 43 NY2d at 194.) This latter caution by the Court has been characterized as dicta particularly in view of two appellate division determinations that appeared to uphold agreements that imposed such a limitation on third parties. (See Kerins v Prudential Prop. & Cas., 185 AD2d 403 [3d Dept 1992]; see also Matter of State Farm Ins. Co. v Smith, 277 AD2d 390 [2d Dept 2000].)
The Kerins decision, however, is particularly instructive: there the Court upheld the limitation on the preclusive effect of an arbitration award (agreed to in a master arbitration agreement) as to a third party, but not on strictly contractual grounds. (Kerins, 185 AD2d at 404.) Instead the Court’s analysis focused on collateral estoppel principles. The Court observed that a collateral estoppel defense requires a showing inter alia of “a full and fair opportunity” to contest a prior determination. (Id.) Where a limitation agreement exists, the Court concluded that the parties’ “expectations” as to a limited estoppel effect could be an acknowledgment that they may not have “litigated vigorously.” (Kerins, 185 AD2d at 404 [internal quotation marks omitted].) The import of the decision is clear: Such a showing of less-than-vigorous litigation, if established by a “practical inquiry into the realities of litigation,” would preclude a collateral estoppel defense in any event. (Id. [internal quotation marks omitted].) Thus, in effect, the Court found that the limitation agreement at issue was valid against a third party because it was consistent with normal collateral estoppel principles. Indeed, this Court’s reliance on Kerins in 2005 must be read as leaving the door open for further “practical inquiry into the realities of litigation” which the Kerins court indicated was the only way to determine the validity of a limiting agreement. (Id. [internal quotation marks omitted].)
Essentially, therefore, the sparse case law pertaining to limitation agreements indicates that limitation of the preclusive effect *228 of certain arbitration awards is not a purely contractual restriction which may be invoked even where there has been a full and fair opportunity to contest a determination. Rather, it is a contractual creation that in cart-before-the-horse fashion reflects the parties’ intentions not to litigate fully or vigorously in the arbitration. (Messinger, 43 NY2d at 193-194; Kerins, 185 AD2d at 404.) Or, as the defendants assert, where such a limitation agreement is made before arbitration or in the arbitration agreement, it is an agreement reserving the parties’ rights to not litigate fully and exhaustively in that arbitration without the risk of later being bound by a factual determination.
Consequently, the determinative factor as to the validity of a limiting agreement is not whether it is entered into before or after an arbitral award, but simply whether the agreement accurately reflects either the parties’ expectations not to fully litigate issues, or the parties’ acknowledgment that they did not fully litigate. (Messinger, 43 NY2d at 193 [“consistent with the principles both of arbitration law and of claim and issue preclusion . . . appropriate clauses of similar limitation may be included . . . and postaward limiting agreements may be executed with respect to outstanding awards”].) As such Messinger and its progeny stand for the proposition that an agreement cannot be used to thwart collateral estoppel principles. Moreover, clearly as a corollary, limiting agreements cannot diminish the rights of third parties where a collateral estoppel defense would normally be available based on the fact that an issue had been fully litigated. (Messinger, 43 NY2d at 194 [“(t)hey cannot, of course, impose similar limitations which would impair or diminish the rights of third persons”].) The concurrence mischaracterizes the majority’s position by stating that it “ignores th[e] language” of our 2005 decision which repeats the Messinger dicta that the “parties themselves can formulate their own contractual restrictions on carry-over estoppel effect.” (Messinger, 43 NY2d at 194.) Given the ineradicable link between that dicta and the Court’s admonition that such a right cannot diminish the rights of third persons, it should be clear that the admonition is implicitly included in any decision, like our 2005 decision, that cites to the Messinger dicta; in other words that the right to “formulate contractual restrictions” is not limitless.
In this case, as the defendants argued in their JNOV motion, evidence at trial established that Feinberg had a full and fair opportunity to litigate at arbitration the very same issues raised *229 in his action against Mahoney Cohen, namely his reliance on the 1995 financial statements.* Facts developed at trial established that Feinberg had litigated the issues at arbitration fully, vigorously and exhaustively: that he was represented by a large law firm; that there was extensive prehearing discovery; that there were 18 days of hearings before a panel of three arbitrators; that 16 witnesses testified; that the depositions of most of the 34 deponents as well as 1,450 exhibits were introduced into evidence. Also established at trial was the fact that the arbitrators made specific and detailed findings denying Feinberg’s claim of fraud in holding that he had full access to business and financial information, and that he had not relied on the 1995 financials in the purchase.
This should have been sufficient for the trial court to grant the defendants’ JNOV motion. However, testimony at trial also established that the main objective of the limiting agreement contemplated by Feinberg and Katz was to interfere with the rights of a specific third party, Mahoney Cohen. Indeed, on summation, Feinberg’s counsel, in endeavoring to show the jury that an agreement between the two enemies was a possibility because they both wanted to sue Mahoney Cohen, stated in relevant part: “It’s a simple deal. It’s, you know what, we can sue Mahoney Cohen. We can sue Mahoney Cohen and we’re not going to allow Mahoney Cohen to use the arbitration award as collateral estoppel.”
Nothing in the relevant case law supports Feinberg’s argument as to the validity of a limitation agreement made after arbitration, after litigating the issues fully, vigorously and exhaustively, and where the agreement is directed at one third party after other third parties have asserted collateral estoppel *230 defenses based on the arbitration award. Such a limitation agreement would be nothing more than an egregious and unenforceable attempt to impermissibly thwart fundamental collateral estoppel principles. Consequently, since a limiting agreement would not have changed the outcome of Feinberg’s lawsuit against Mahoney Cohen, the failure to advise Feinberg about a limiting agreement did not constitute a breach of the defendants’ duty of care nor did it cause Feinberg’s losses.
Accordingly, the judgment of the Supreme Court, New York County (Barbara Jaffe, J.), entered June 17, 2011, upon a jury verdict, awarding plaintiff the total sum of $10,576,012.70, and bringing up for review an order of the same court and Justice, entered June 7, 2011, which, inter alia, denied defendants’ motion for judgment notwithstanding the verdict or, in the alternative, granting a new trial, should be reversed, on the law, with costs, and the motion for judgment notwithstanding the verdict, granted. The Clerk is directed to enter judgment in favor of the defendants dismissing the complaint. The appeal from the order should be dismissed, without costs, as subsumed in the appeal from the judgment.

 The concurrence’s quibble, as part of its law of the case analysis, that this evidence was uncontested and therefore before the Court in 2005 misses the point. As stated above, in the procedural posture of the parties in 2005, the Court’s sole focus as reflected in its short decision was whether Feinberg could amend his complaint to sufficiently allege that a limiting agreement was possible between him and Katz, and that under certain circumstances a limiting agreement could impose limitations on third parties. It does not avail the concurrence to posit that, on the other hand, law of the case could be circumvented on the basis of “new” evidence at trial namely that “it became clear that the agreement Feinberg and Katz contemplated . . . would have been directed solely at Mahoney Cohen.” Just as it was known to the Court in 2005 that there had been full and exhaustive litigation, so it was known to the Court in 2005 that Feinberg’s limiting agreement would have been directed solely at Mahoney Cohen. This is because Feinberg’s legal malpractice action was based entirely on his claim that had he entered such a limiting agreement, his lawsuit against Mahoney Cohen would not have been dismissed.