■ WILLIAM MAYERS, Respondent, v NICHOLAS D'AGOSTINO et al., Appellants. — Judgment, Supreme Court, Bronx County (Patlow, J.), entered May 21, 1980, awarding plaintiff $50,657.94, affirmed, with costs. In August, 1976, plaintiff, while driving his own car, collided with defendants' vehicle at a Bronx intersection. Thereafter, plaintiff consulted an orthopedist, Dr. Etkind, on eight occasions and incurred expenses of $1,025 for these visits. In the course of this treatment, plaintiff assigned his no-fault insurance claim, then in the amount of $635, to Dr. Etkind. After plaintiff's carrier refused payment, arbitration proceedings were commenced. The claim was denied on the ground that claimants Etkind and Mayers had failed to prove that the alleged injuries for which plaintiff was treated were causally related to this vehicular accident. Defendants' primary contention on this appeal is that this arbitral determination precluded plaintiff's claim in this litigation by virtue of the operation of collateral estoppel. The then prevailing Insurance Law, sections 671 and 674, limited causes of action for personal injury to recover noneconomic loss arising out of negligence in the operation of a motor vehicle to situations in which a personal injury resulted in the "permanent loss of use of a body * * * function" *or* in which "the reasonable and customary charges for medical * * * [and] x-ray * * * services necessarily performed as a result of the injury would exceed five hundred dollars" (L 1973, ch 13, § 1). Defendants argue that the rejection of the $635 claim by the arbitrator should have required the court, as a matter of law, to strike that amount from plaintiff's medical expenses, reducing such expenses below the statutory threshold amount. This, it is argued, would require dismissal of the complaint. Further, it is claimed that Dr. Etkind's testimony should have been barred in its entirety as the arbitrator found the injuries which he had treated and of which he had knowledge were not causally related to the accident. This claim would presumably require reversal and the grant of a new trial as there was trial evidence of the injuries plaintiff suffered in the accident other than the testimony of Dr. Etkind. It is apparent that defendants' plea for a dismissal of the complaint is flawed. Quite apart

from the amount of the necessary medical expenses plaintiff incurred as a result of this accident, the jury found, in response to a specific interrogatory put to it by the court, that the plaintiff had sustained an injury resulting in the permanent loss of the use of a body function. This finding is sufficient under the statute to provide an alternative, independent basis for plaintiff's cause of action, irrespective of the medical expenses necessarily incurred. The claim that Dr. Etkind should not have been permitted to testify is a broader one. It appears that the argument is that the arbitral determination rejected a causal relationship between the alleged injuries for which Dr. Etkind treated plaintiff and the accident, and that this determination was binding on plaintiff in the civil action, requiring a ruling that the doctor's testimony was essentially immaterial. We do not accept the contention that this arbitral determination precluded plaintiff's litigation of any issue in his civil action. At the outset, we note that while plaintiff was a named party to the arbitration and he had some indirect financial interest in the outcome thereof, as noted by the dissent, his legal interest in that proceeding was nominal as he had already assigned the no-fault claim. More importantly, the adversary party in that proceeding was plaintiff's insurance carrier. Defendants played no role in the arbitration proceeding. Defendants' invocation of the doctrine of collateral estoppel is thus offensive in nature, an attempt to utilize an adjudication against plaintiff made in a prior proceeding in which defendants did not participate. We find no mandate in the decisions of the Court of Appeals which would require us to extend the collateral estoppel effect of arbitral determinations to such instances. Indeed, in the leading case of *Matter of American Ins. Co. (Messinger—Aetna Cas. & Sur. Co.)* (43 NY2d 184, 190) where an arbitral determination was given collateral estoppel effect, the Court of Appeals emphasized: "This is not an instance of issue preclusion in subsequent litigation between different parties, in which the question would be the effect to be accorded a prior determination when the same issue arises in a subsequent proceeding to which one of the former litigants is a party but where the adversaries in the second proceeding are not the same as those in the first proceeding. Therefore our decisions in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65) and *B. R. DeWitt, Inc. v Hall* (19 NY2d 141) are not on point." It is clear that the standards set forth in the *Schwartz* case to determine whether plaintiff had a full and fair opportunity to establish his factual propositions in the prior proceeding so as to allow the application of collateral estoppel in the subsequent proceeding do apply to this case. These standards involve "an exploration of the various elements which make up the realities of litigation" (*Schwartz v Public Administrator of County of Bronx, supra,* p 72). On several counts, we conclude that the arbitration proceeding failed to meet the requisite standards. As noted, the plaintiff's legal interest in the arbitration proceeding was nominal and it is not seriously disputed that it was Dr. Etkind who controlled the presentation of the no-fault claim. Further, while the arbitration proceeding involved a claim of $635 against plaintiff's insurance carrier, the complaint in this civil action directed against the driver, found to have been actively negligent, sought $250,000. Given the relative insignificance of the prior arbitration proceeding, claimants could not reasonably be expected to prosecute it with the same vigor as this action (*Gilberg v Barbieri,* 53 NY2d 285, 293). And, of course, the nine-day trial of this action was a far more formal proceeding than the no-fault arbitration. Accordingly, we decline to hold that plaintiff should be bound in this action by the determination of issues made by the arbitrator in the prior proceeding. We have examined defendants' other points and find them to be of insufficient merit to warrant a new trial. Concur — Birns, J. P., Sandler, Markewich and Fein, JJ.

Bloom, J., dissents in a memorandum as follows: This case arises out of the collision of two motor vehicles at the intersection of Randall Avenue and New England Expressway in The Bronx on August 9, 1976. Plaintiff's vehicle was in one of the southbound lanes of Randall Avenue, waiting for the traffic signal to change from red to green. To his immediate right was a truck. In order to observe traffic to his right he permitted his car to roll for a distance of approximately two feet. At that point he first saw the vehicle owned by defendant D'Agostino and operated by his son Nicholas (collectively the defendant) crossing the intersection and in the process of making a left turn onto the expressway. Other traffic proceeding in the same direction as defendant's automobile was stopped for the traffic light. As the defendant's vehicle veered to the left to make the turn it struck the vehicle operated by plaintiff. While plaintiff did not estimate the speed of the D'Agostino vehicle he did state that "[t]he car was bearing down on me very fast". After a somewhat acrimonious exchange among Nicholas, his passenger and plaintiff, Nicholas, who possessed only a junior driver's license which did not permit him to operate a vehicle in New York City, drove away. Either hours later or the next day the plaintiff reported the accident to the police. That report indicated that the D'Agostino car had left the scene of the accident and that no injuries had occurred. At the time of the accident plaintiff was 68 years old. Prior to his retirement some four years prior thereto, he had been employed by the New York City Transit Authority as a masonry foreman. Throughout his adult life plaintiff had been engaged in heavy work. By consequence he had been treated by chiropractors since he was 20 years old. Immediately prior to the accident he had been treated by Dr. Marrone, a chiropractor, with greater or lesser regularity. After the accident he saw Dr. Marrone almost daily for a period of approximately one month. Thereafter, the frequency of these visits was reduced to once or twice a week. This action was commenced in or about October, 1977. Plaintiff first visited an orthopedist on December 7, 1977, some two months *after* the commencement of the action. The orthopedist, Dr. Etkind, was seen approximately six times. So far as the record indicates, plaintiff did not visit any other physician or surgeon for the back injuries claimed to have been suffered by him. The jury returned a verdict in the sum of $83,350, apportioning 60% of the fault to defendant and 40% to plaintiff. By reason of the apportionment the verdict in plaintiff's favor was reduced to $50,010. Three questions are posed by defendant dealing with the testimony of the experts and one dealing with damages. Dr. Etkind appeared as a witness for plaintiff on the third day of the trial. During cross-examination by defendant it was brought to the attention of the court, in the absence of the jury, that plaintiff had assigned his no-fault claim in the sum of $635 to Dr. Etkind; that Dr. Etkind had made demand for payment from State Farm Mutual Insurance Company, plaintiff's no-fault insurer; that the insurer had refused to pay and the matter was referred to arbitration. Both plaintiff and Dr. Etkind were listed as claimants in that proceeding which resulted in an award in favor of the insurer upon the ground that the proof submitted failed to establish any causal relationship between the injuries alleged to have been suffered by plaintiff and the treatment by Dr. Etkind. Defendant "suggested" quite strongly that the doctrine of *res judicata* was applicable and barred the testimony of Dr. Etkind. The court responded: "Arbitration on no-fault is not binding on this Court". At the close of plaintiff's case defendant moved formally to add the defense of collateral estoppel. The court reserved the decision on the motion. After the jury had rendered its verdict defendant moved to set it aside, again noting that Dr. Etkind's testimony should have been barred. At that point the court specifically denied the application. It did

so solely on the ground that the formal motion to add the defense was not made until the close of plaintiff's case. It is now established law that the doctrines of *res judicata* and collateral estoppel are applicable to a determination made in arbitration (*Matter of American Ins. Co. [Messinger—Aetna Cas. & Sur. Co]*, 43 NY2d 184; *Rembrandt Inds. v Hodges Int.*, 38 NY2d 502) or in an administrative proceeding (*Bernstein v Birch Wathen School,* 71 AD2d 129, affd 51 NY2d 932). Such a determination bars any subsequent litigation involving the same parties and the same subject matter. Indeed, in *Kilduff v Donna Oil Corp.* (74 AD2d 562), the precise issue here addressed was resolved by a holding that a determination by a no-fault arbitrator served, under the doctrines of *res judicata* and collateral estoppel, to bar subsequent litigation of the same subject matter in the judicial forum. Two arguments are raised by my brethren in the majority to counter the holding in *Kilduff.* First, they assert that plaintiff was only a formal party to the no-fault arbitration and hence, is not bound thereby. To this the short answer is that he had a real monetary interest therein. Had the arbitration proved successful, he would have been relieved of the obligation to pay Dr. Etkind. The award left him with that obligation. Moreover, the degree to which he actually participated in the arbitration in which he was named as a party and in which he was represented by counsel, albeit the same attorney as represented Dr. Etkind, was never indicated. At the very least the court was required to inquire as to the degree of his participation in the arbitration. The second argument is the one relied on by the trial court, the lateness of the application. Again, the record does not disclose when the information concerning the arbitration first came to the attention of the defendant. It is entirely conceivable that the information was obtained after the case had been assigned to a part for trial. Although it would have been proper, if that were the case, to make the motion to add the defense at the opening of the case, a delay of little more than a day after the selection of the jury, the court's preliminary charge and the openings of counsel, was not so inordinate as to warrant denial of the application. Parenthetically, it ought be noted that the right of defendant's insurer to seek partial recoupment from plaintiff's no-fault insurer has been affected adversely by the arbitration award. In these circumstances, I would hold that denial of the motion to add the defense was an abuse of discretion as a matter of law. The second matter involving the experts involves the failure of Dr. Marrone to produce certain records subpoenaed by the defense. In that subpoena defendant requested records of Dr. Marrone's treatment of plaintiff prior to the accident of August 9, 1976, as well as subsequent thereto. The purpose obviously was to furnish a comparison of the treatment of plaintiff prior to the accident with the treatment subsequent thereto. When Dr. Marrone appeared to testify he carefully selected and brought with him only those records which indicated treatment subsequent to the accident. After a dispute between counsel the court directed that the records be produced and that Dr. Marrone hold himself subject to recall in the event the records made that necessary. The records were never produced. The court's direction was not obeyed and unfortunately, counsel for defendant never moved to strike Dr. Marrone's testimony. However, the case went to the jury without knowledge of the contents of this undisclosed testimony. The result was that defendant was deprived of a fair trial. The final evidence issue concerns the exclusion of a part of the testimony of Dr. Ernest H. Bettman, who was called as a witness by defendant. Dr. Bettman had conducted a physical examination of plaintiff for State Farm Insurance Company in connection with the no-fault arbitration between plaintiff and Dr. Etkind on the one hand and State Farm Insurance Company on the other. It was his testimony, at least in part, which led the arbitrator to conclude that

plaintiff did not establish a causal relationship between the injuries alleged to have been suffered by plaintiff and the treatment by Dr. Etkind. While the trial court permitted Dr. Bettman to testify as an expert it precluded him from testifying as to his findings upon his examination of plaintiff on the ground that there had been no exchange of medical information. In that regard his ruling contrasts starkly with his ruling permitting Dr. Etkind to testify with respect to his findings at a physical examination conducted approximately a week prior to trial, although no "detailed written report" had been furnished to defendant. Be that as it may, CPLR 3121 makes it evident that only where the examination is *conducted* by an adverse party is a copy of a detailed written report required to be furnished. Rule 660.11 of the Rules of the Appellate Term of the First Department (22 NYCRR 660.11) makes provision for the exchange of medical information. However, it does not require a party to furnish a detailed written report of a physical examination made by someone in connection with a different action or proceeding and who is a stranger to the present action. Dr. Bettman's examination was conducted for the arbitration proceeding and not for this action. Hence, it was error to preclude him from testifying as to his findings. A final word on the issue of damages. The jury returned a verdict in excess of $83,000 which was reduced to $50,010 because plaintiff was found to be 40% at fault. Plaintiff was not hospitalized for a single day; he did not consult a physician or surgeon until 16 months after the accident and two months after the commencement of this action. Were I not voting to reverse I would hold that the verdict is grossly excessive and vote to reduce it most substantially. However, in light of the errors referred to I am impelled to the conclusion that the judgment should be reversed and the case remanded for a new trial on the issue of damages only.