OPINION OF THE COURT
Charles H. Cohen, J.
This case presents the hitherto unresolved question as to whether a plaintiff who is awarded a certain sum for personal injuries.upon an inquest against one defendant may be limited to that sum when proceeding against another defendant with respect to those same personal injuries.
As stated in the affidavit in support of this motion, plaintiffs brought this action against several defendants “in negligence, breach of warranties, strict liability and statutory liability to recover for injuries and damages allegedly sustained by plaintiff Raymond Baxter while using” a certain machine.
One of the defendants, Fulton Ice & Cube Co., Inc. (Fulton), failed to answer and plaintiff Raymond Baxter obtained a court order directing an inquest against that defendant. Upon an inquest held before the court, this plaintiff was awarded a judgment of $100,000 against Fulton.
*635 One of the other defendants, Ohio Gear, has now made a motion for leave to serve a supplemental answer. This defendant contends that the judgment against Fulton “constitutes a conclusive adjudication as to the total amount of damages plaintiff may recover” and
“asks the Court’s leave to serve a supplemental answer setting forth the judgment against defendant fulton as a limit to any recovery against defendant Ohio gear (Third affirmative defense) and barring recovery against said defendant in whole or in part if defendant Fulton should pay all or part of the judgment (Fourth and Fifth affirmative defenses). However, if it should eventually be held that plaintiff is not precluded from proving damages in excess of $100,000.00 against defendant ohio gear, the Sixth affirmative defense alleges that any verdict or judgment against said defendant must be reduced by the amount paid by defendant fulton.
“In addition to the relief heretofore requested, deponent respectfully submits that the cause of action on behalf of plaintiff Roseanna Baxter against defendant ohio gear should be discontinued inasmuch as her action was discontinued by the judgment entered June 17, 1982.”
The response on behalf of plaintiff is as follows: “Your deponent has no objection to the defendants serving Sup-: plemental and/or Amended Answers upon the plaintiffs containing the defenses listed in their respective Motion and Cross-Motion and will stipulate to same. However, in the interest of judicial economy, the plaintiffs make the instant Cross-Motion to strike the defendants’ affirmative defenses that seek to limit the plaintiffs’ recovery against the said defendants to the $100,000.00 verdict rendered in a Judgment after an Inquest was held against defendant, FULTON ICE & CUBE CO., INC.”
Defendant Ohio Gear contends “that the judgment constitutes a conclusive adjudication as to the total amount of damages plaintiff may recover”. Plaintiff states that Fulton “was at the time of the inquest and remains, upon information and belief, a defunct corporation. In a deposition of Joe Marino, who had been a shareholder and/or owner of this corporation taken on 5/15/81, Mr. Marino *636 testified that the equipment owned by fulton ice & cube co. was sold in December of 1980 to another corporation (see ‘Exhibit A’ annexed). The corporation had no insurance coverage applicable to the instant matter. Consequently, the chances of collecting a judgment from a defunct corporation being very slim, the inquest proceedings were not tried with the same type of intensity, vigor or extent that would be used, for example, for a case where recovery is likely or feasible, (i.e. A physician was not used to address the issue of damages for inquest purposes.)”
The court is called upon to determine whether the doctrine of collateral estoppel, also called issue preclusion, bars plaintiffs from recovering against defendant Ohio Gear a judgment in an amount greater than the sum of $100,000, the amount of the judgment plaintiffs recovered in an inquest against defendant Fulton. In Schwartz v Public Administrator of County of Bronx (24 NY2d 65), the Court of Appeals set forth what might be termed the modern rule with respect to this doctrine. It stated (p 71): “New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.”
In the instant case, it is clear that the same issue is involved — the amount of plaintiff’s damages for the same personal injuries. The question to be decided is whether plaintiff had a “full and fair opportunity to contest the decision now said to be controlling.” (Ibid.)
Plaintiff in this action asserts that since defendant Fulton was a defunct corporation without insurance so that the changes of collecting a judgment against it were slim, plaintiffs did not proceed at the inquest “with the same type of intensity, vigor or extent” as would have been displayed if recovery were likely. With respect to this point, the court has considered Matter of American Ins. Co. (Messinger — Aetna Cas. & Sur. Co.) (43 NY2d 184). In that case, it was held that a determination made in a property damage arbitration proceeding between two in *637 surance carriers disallowing the disclaimer of coverage by one of them is binding in a controversy between the same carriers in a subsequent personal injury action arising out of the same accident. The court stated that the assertion by the party resisting preclusion that it had no real incentive to press a vigorous defense in the first proceeding, which apparently involved a relatively small sum of money, was not a good reason to deny preclusion, at least in a situation involving the same parties. It stated (p 192): “The consequences of issue preclusion between the same parties are not to be vitiated by lack of enthusiasm or effort on the part of the loser.”
The court pointed out (supra, at p 192) that “Even under Schwartz the requirement is only that there have been a Tull and fair opportunity to contest the decision now said to be controlling’ (24 NY2d 65, 71; emphasis supplied), not that there have in fact been a full and fair contest.” Since plaintiff in this -case could presumably have made a full and complete presentation of the extent of his personal injuries at the inquest, it could be said that he had a “full and fair opportunity” to do so, and he is therefore bound by the determination at the inquest.
Yet, it must be noted that this is not a case where the same parties were involved in the inquest, defendant Ohio Gear not having been a party to the inquest. The broad scope of collateral estoppel as set forth in Messinger (supra), where the court emphasized that it was dealing with the same parties, is not necessarily applicable here (see Mayers v D’Agostino, 87 AD2d 519, 520).
More recently, in Gilberg v Barbieri (53 NY2d 285, 291), the Court of Appeals narrowed the concept of what is a “full and fair opportunity.” In that case, it was decided that a harassment conviction in the City Court of Mount Vernon should not be given conclusive effect in a civil action for damages. It reiterated what it said in Schwartz (supra) and stated (p 292) that “the question as to whether a party had a full and fair opportunity to litigate a prior determination, involves a practical inquiry into The realities of litigation. A comprehensive list of the various factors which should enter into a determination whethér a party has had his day in court would include such considerations *638 as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation’.”
The “realities of litigation” are such that at the inquest there is rarely, if ever a full presentation of proof of damage. In this case, defendant Fulton, which did not appear at all, as indicated by the transcript of the inquest, was apparently a defunct corporation without insurance. In such a situation, the observations made in Gilberg (supra), relating to the city court case, apply equally as well to the inquest. The Court of Appeals stated (p 293): “Nor could he reasonably expect or be expected to defend with the same vigor. The brisk, often informal, way in which these matters must be tried, as well as the relative insignificance of the outcome, afford the party neither opportunity nor incentive to litigate thoroughly or as thoroughly as he might if more were at stake.”
In Mayers v D’Agostino (87 AD2d 519, supra), plaintiff had brought a no-fault arbitration proceeding against his insurance carrier in which he failed to prove that certain injuries he suffered were causally related to a vehicular accident involving defendant. In a subsequent civil action brought by plaintiff against defendant, the court refused to permit the offensive use of the collateral estoppel doctrine. The court, following Gilberg (supra), recognized (p 520) that, “Given the relative insignificance of the prior arbitration proceeding, claimants could not reasonably be expected to prosecute it with the same vigor as this action”.
In this case, the plaintiff at an inquest, particularly with respect to an uninsured defunct corporation, could hardly be expected to proceed with the same vigor as he would at a trial with a viable defendant. As the transcript indicates, the inquest, at which plaintiff was the only witness, was brief. No medical doctor was produced. Of course, plaintiff could have produced a doctor and could have tried to present all of his evidence with respect to damages. Yet, if the “realities of litigation” are considered, it would be too much to require a plaintiff to go to the expense and effort *639 involved in bringing a medical doctor to testify at an inquest. The doctrine of collateral estoppel is “essentially a rule of justice and fairness” (Commissioners of State Ins. Fund v Low, 3 NY2d 590, 595). To apply it in this case would not be just or fair. As stated in Schwartz (supra, at p 73), “No one would contend that the doctrine of collateral estoppel should be applied rigidly.”
Moreover, in this kind of situation, giving conclusive effect to the inquest against plaintiff would not necessarily reduce the amount of subsequent litigation since a defendant who was not a party to the inquest would not be bound by the amount awarded to plaintiff in the inquest. Limiting plaintiff to the amount awarded at the inquest would merely put a ceiling on what he might recover against another defendant without necessarily eliminating the need for plaintiff to prove damages against that defendant.
The motion of Ohio Gear is granted on consent. The cross motion of plaintiffs to strike the “affirmative defenses that seek to limit plaintiffs’ recovery * * * to the $100,000 verdict” is granted.