In the Matter of NEWSDAY, INC., Petitioner, v PHILIP ROSS, as Industrial Commissioner of the Department of Labor, Respondent.

Second Department, March 30, 1981

APPEARANCES OF COUNSEL

*Townley & Updike (James D. Madigan, III,* and *Andrew L. Hughes* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Morris N. Lissauer* and *Henriette Frieder* of counsel), for respondent.

OPINION OF THE COURT

MANGANO, J.

The primary issue in this proceeding is whether and to what extent the doctrine of collateral estoppel applies to adjudicatory determinations of administrative agencies.

On March 9, 1978, after approximately seven years of employment, Mr. Richard Thone was discharged from his position by petitioner (the employer). The reason given for the discharge was that Mr. Thone had falsified certain official reports kept in the ordinary course of his employer's business.

Thereafter, Mr. Thone applied for unemployment insurance benefits at a local office of the State Department of Labor. However, he was disqualified from receiving benefits, since it was determined by the local office that he had lost his employment due to misconduct. Mr. Thone appealed this initial determination. A referee's hearing was conducted at which Thone, as the claimant, his employer, and a representative of the Industrial Commissioner of the State Department of Labor appeared. At this hearing, testimony was taken and a full opportunity to be heard was accorded all interested parties. By a decision filed July 7, 1978, the referee overruled the initial determination of the local agency and thus granted Thone unemployment insurance benefits.

The employer appealed the referee's decision to the Unemployment Insurance Appeal Board. The board reviewed

the full record in the case, and written statements submitted on appeal by the claimant Mr. Thone and by the employer. In a decision dated December 18, 1978, the board found that Mr. Thone had falsified records which his employer had required him to keep. Furthermore, it concluded that the falsification of these records constituted misconduct, which was the reason for Mr. Thone's discharge from employment. The appeal board, therefore, reversed the decision of the referee and sustained the initial determination of the local agency.

At approximately the same time as Mr. Thone applied for unemployment insurance benefits, he filed a claim with the Industrial Commissioner of the State Department of Labor (Industrial Commissioner), apparently alleging that upon his discharge from employment he had not received a termination allowance to which he was entitled under the employer's written personnel policies. Upon investigating this claim, the Industrial Commissioner found that the employer's personnel policies provided for a termination allowance; that such an allowance was payable under section 198-c of the Labor Law; that the employer had failed to pay Mr. Thone his termination allowance within the time required by law; and that on Mr. Thone's claim the employer owed $3,284. Therefore, by order dated August 30, 1978, the employer was directed, *inter alia*, to comply with the provisions of section 198-c of the Labor Law by paying to the Industrial Commissioner, for the benefit of Mr. Thone, the amount due and owing under Mr. Thone's claim.

By petition filed October 25, 1978, the employer sought review of the Industrial Commissioner's order before the Industrial Board of Appeals.[1] A hearing was commenced

---

1. It should be noted that the order of August 30, 1978, had also directed that the employer pay a termination allowance to another one of its former employees. The petition before the Industrial Board of Appeals, therefore, having sought review of this order in its entirety, also challenged the disposition of this other claim by the Industrial Commissioner. However, since the Industrial Board of Appeals ultimately decided that the other employee, having been discharged for just cause, was not entitled to a termination allowance, the instant petition does not seek review of that portion of the board's decision. Therefore, we only refer to the order of the Industrial Commissioner, the petition seeking review thereof, the proceedings before the Industrial Board of Appeals and its decision, as they relate to the claim of Mr. Richard Thone.

on March 20, 1979, and was conducted over several days. The employer and the Industrial Commissioner appeared and were represented by counsel. The claimant Mr. Thone was not a party to this proceeding, but did testify as one of the commissioner's witnesses.

At the hearing, the primary factual issue in dispute regarding Mr. Thone's claim was whether he had been discharged for just cause.

In a memorandum decision dated August 23, 1979, the Industrial Board of Appeals determined, *inter alia*, that because the employer had "failed to establish on the acceptable evidence, that Mr. Thone's discharge was for 'just cause', its failure to pay the severence benefits to him [was] a violation of [section] 198-c [of the Labor Law]." As applicable to Mr. Thone, therefore, the order of the Industrial Commissioner, dated August 30, 1978, was confirmed.

*We annul.*

In this proceeding pursuant to CPLR article 78, the issue has been raised whether the Industrial Commissioner should have been collaterally estopped from litigating before the Industrial Board of Appeals whether Mr. Thone had been discharged from employment for just cause, since by the prior decision of the Unemployment Insurance Appeal Board it had been determined that Mr. Thone had been discharged for misconduct.[2]

The doctrine of collateral estoppel is "a component of the broader doctrine of *res judicata* which holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action [cita-

---

2. In comparing the administrative processes by which the validity of Mr. Thone's two separate claims for unemployment insurance benefits and severance benefits were determined, the sequence of certain events must be emphasized. Mr. Thone's claim for unemployment insurance benefits was decided in his favor by the referee on *July 7, 1978*. The order of the Industrial Commissioner directing the employer to pay Mr. Thone's termination allowance was dated *August 30, 1978*. The decision of the Unemployment Insurance Appeal Board reversing the referee was dated *December 18, 1978*. Upon the employer's petition to review the Industrial Commissioner's order of *August 30, 1978*, a hearing was conducted by the Industrial Board of Appeals on *March 20, 1979*, *April 19, 1979*, *June 12, 1979*, and *June 13, 1979*. The determination confirming the Industrial Commissioner's order was dated *August 23, 1979*.

tions omitted]." *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485.) As a corollary to the doctrine of *res judicata,* collateral estoppel "permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided [citations omitted]." *(Gramatan Home Investors Corp. v Lopez,* at p 485; see, also, *Weiner v Greyhound Bus Lines,* 55 AD2d 189, 191; 9 Carmody-Wait 2d, NY Prac, § 63:196.)

The general applicability of the doctrines of *res judicata* and collateral estoppel to the quasi-judicial determinations of administrative agencies has long been recognized in New York. *(Matter of Evans v Monaghan,* 306 NY 312, 323-324; *Bernstein v Birch Wathen School,* 71 AD2d 129, 132; *Matter of Silberman v Whalen,* 70 AD2d 537; *Matter of Blanco v Blum,* 67 AD2d 947, 948.) Developed to bring finality to dispute resolution in the courts, these common-law doctrines have been applied to decisions of administrative agencies when rendered pursuant to the adjudicatory function of these agencies. (See 2 Davis, Administrative Law Treatise, § 18.03, p 559, § 18.08, p 597; see, also, *Matter of Venes v Community School Bd. of Dist. 26,* 43 NY2d 520, 525; *Matter of Colton v Berman,* 21 NY2d 322, 337.) "[S]uch determinations, when final, become conclusive and binding on the courts [citations omitted]" *(Bernstein v Birch Wathen School, supra,* p 132), as well as on other quasi-judicial administrative tribunals. (See *Safir v Gibson,* 432 F2d 137, 142-143, cert den *sub nom. American Export Isbrandtsen Lines v Safir,* 400 US 942; *Whitman Elec. v Local 363, Int. Brotherhood of Elec. Workers, AFL-CIO,* 398 F Supp 1218, 1221.)

On a case-by-case basis, collateral estoppel, which is specifically at issue here, "is elusive and difficult to apply * * * but it is essentially a rule of justice and fairness." *(Commissioners of State Ins. Fund v Low,* 3 NY2d 590, 595.) "It involves not one but two rules of public policy. The first is that a question once tried out should not be relitigated between the same parties or their privies. The other public policy involved in collateral estoppel and *res judicata,* however, is that these doctrines must not be allowed to

operate to deprive a party of an actual opportunity to be heard [citations omitted]." *(Commissioners of State Ins. Fund v Low*, at p 595; see, also, *Hinchey v Sellers*, 7 NY2d 287, 294.) As restated in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 71), these two rules set forth the "two necessary requirements for the invocation of the doctrine of collateral estoppel * * * [, viz.,] an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and * * * a full and fair opportunity to contest the decision now said to be controlling." Thus, there must be an identity of issues and an identity of parties. And the party against whom collateral estoppel is asserted, or his privy, must have been given a full and fair opportunity to litigate in a prior proceeding the issue sought to be precluded in the subsequent proceeding.

Although collateral estoppel "emphasizes identity of issues rather than identity of parties, the relationship of the parties in the first litigation must still bear high significance in the analysis. The doctrine, it is true, bars not only parties to the first litigation, but also their privies *(Downey v Seib*, 185 NY 427, 433). Yet, privity is an admittedly amorphous term—it 'denotes mutual or successive relationship to the same right of property' *(Bigelow v Old Dominion Copper Co.*, 225 US 111, 129)." *(Weiner v Greyhound Bus Lines*, 55 AD2d 189, 192, *supra.)*

In the case at bar, then, we must answer two basic questions in determining whether the Industrial Commissioner should have been estopped from litigating before the Industrial Board of Appeals whether Mr. Richard Thone was discharged from employment for just cause, viz.:

(1) whether there existed an identity between the issues of discharge for just cause, as litigated before the Industrial Board of Appeals, and discharge for misconduct, as previously litigated before the unemployment insurance referee and Unemployment Insurance Appeal Board, and, if so,

(2) whether the Industrial Commissioner, or someone in privity with him, had a full and fair opportunity to litigate this issue in the prior proceeding.

As to the first question, it is apparent that "misconduct," within the meaning of section 593 of the Labor Law, and "just cause" for discharge from employment, as contained in the written personnel policies of the petitioner employer, are not necessarily synonymous terms. It is conceivable that just causes for discharge exist beyond that of an employee's misconduct. However, on the facts of this case, these terms are synonymous, or at least, identical for the purpose of collateral estoppel. It was the allegation that Mr. Thone had falsified certain business records of his employer that was litigated before the unemployment insurance referee and the appeal board, and ultimately found to be true, thus constituting misconduct under section 593 of the Labor Law. The existence of this very same conduct, i.e., the falsification of records, was the precise factual issue in controversy before the Industrial Board of Appeals. It was this conduct which formed the basis of the employer's contention that it had discharged Thone for just cause.

As to whether the parties before the unemployment insurance referee and appeal board, and the Industrial Board of Appeals were the same or in privity with each other, it must be observed that Mr. Thone litigated his unemployment insurance claim, whereas the Industrial Commissioner litigated Mr. Thone's claim for severance benefits. Nevertheless, in each case, Mr. Thone was the real party in interest. Although the Industrial Commission was the nominal party in the proceeding before the Industrial Board of Appeals, he only acted in a derivative capacity, as assignor of Mr. Thone's claim for wage supplements, pursuant to section 196 of the Labor Law.

Furthermore, on this record it appears that a full and fair hearing was conducted by the unemployment insurance referee and an adequate review of that proceeding was afforded Mr. Thone by the Unemployment Insurance Appeal Board. It must be concluded, therefore, that the Industrial Commissioner, through Mr. Thone, had "a full and fair opportunity to contest the decision now said to be controlling." *(Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65, 71, *supra.)* Thus, the determination of the Unemployment Insurance Appeal Board on the issue of misconduct was final and conclusive, and, for purposes of

collateral estoppel, was binding on the Industrial Commissioner in the subsequent proceeding before the Industrial Board of Appeals.

The Industrial Board of Appeals, however, ruled, in effect, that the Industrial Commissioner was not precluded from relitigating the factual issue of Mr. Thone's falsification of records by reason of the prior decision of the Unemployment Insurance Appeal Board. Moreover, in its final determination, the Industrial Board of Appeals, held, in effect, that said prior decision was not conclusive on the question of Mr. Thone's falsification of records, but reconsidered the issue based on evidence adduced before it.

Accordingly, for the reasons stated above, the determination of the Industrial Board of Appeals must be annulled, and Thone's claim for severance pay denied.

MOLLEN, P. J., TITONE and O'CONNOR, JJ., concur.

Petition granted, determination of the Industrial Board of Appeals, dated August 23, 1979, annulled insofar as reviewed, on the law, without costs or disbursements, and the claim of Richard Thone for severance pay is denied.