JORDAN KRET, an Infant, by His Father and Natural Guardian, ARTHUR KRET, Respondent, v BROOKDALE HOSPITAL MEDICAL CENTER et al., Appellants.

Second Department, May 9, 1983

### APPEARANCES OF COUNSEL

*Garbarini, Scher & De Cicco, P. C.* (*George J. Kehayas* and *Leo Rothbard* of counsel), for appellants.

*Kramer, Dillof, Tessel, Duffy & Moore* (*Claudia A. Morales* of counsel), for respondent.

### OPINION OF THE COURT

BOYERS, J.

The issue for our consideration is whether a judgment in a prior malpractice action in which it was determined, *inter alia,* that the defendant attending physician was not guilty of malpractice with regard to the monitoring of the infant plaintiff and his mother during labor (*Kret v Gergely,* Supreme Ct, Kings County, June 23, 1977, ADLER, J., Index No. 1775/75), operates to bar the present action on behalf of the same plaintiff against the hospital and its resident physician on the ground that the issues determined or necessarily decided in the prior lawsuit are

"identical" to those raised herein? We answer this question in the affirmative, holding that since plaintiff was afforded a full and fair opportunity to litigate his contentions, he is collaterally estopped from relitigating issues which were necessarily determined by the jury in the prior action.

This appeal by defendants from an order of Special Term denying their motion for summary judgment dismissing the complaint arises out of a second medical malpractice action predicated upon events preceding the birth of the infant plaintiff, Jordan Kret, on July 5, 1972. The initial litigation instituted on behalf of the infant plaintiff was commenced on or about September 27, 1974 against Dr. Klara Gergely, the mother's attending physician, Dr. Robert Norton, a pediatrician, and Brookdale Hospital Medical Center (hereinafter Brookdale). It was urged that the malpractice included the defendants' failure to properly monitor the mother's condition during labor when, *inter alia,* her blood loss was allegedly abnormal. While the bill of particulars in the prior action stated that the defendants failed to treat a maternal complication known as "placenta previa", at trial it was plaintiff's position and that of his medical expert, Dr. Bernard Nathanson, that the mother's continuous moderate vaginal bleeding from the time of her admission until delivery approximately four hours later, was symptomatic of a condition known as *"abruptio placentae"* in which the placenta prematurely separates from the uterine wall[1] thereby causing depletion in oxygen transfer from the mother to the fetus. This oxygen depletion caused fetal distress evidenced, plaintiff contended, by a single transitory deceleration in the fetal heart rate from 134 to

---

1. More specifically, *abruptio placentae* refers to a condition in which a "normally located placenta undergoes separation from its uterine attachment between the twentieth week of pregnancy and the birth of the infant" due to hemorrhage under the placenta (Williams, Obstetrics [14th ed, 3d printing], p 623). Such pathology, which occurs in varying degrees, "leads to separation, compression, and ultimate destruction of function of [that] portion" of the placental tissue adjacent to the hematoma which develops as a result of the hemorrhage (Williams, Obstetrics [14th ed, 3d printing], p 627). Such premature separation is distinguishable from placenta previa, a condition which also causes maternal hemorrhage. In the latter abnormality, the placenta "instead of being located high up in the uterus, is located low in the uterus, either overlying or reaching to the vicinity of the internal [cervical opening]" (Williams, Obstetrics [14th ed, 3d printing], p 609; see, also Greenhill and Friedman, Biological Principles and Modern Practice of Obstetrics, chs 37, 38).

92 beats per minute, during labor and approximately an hour after the mother's admission to Brookdale. It was alleged that as a consequence of defendant Gergely's failure to monitor the maternal and fetal condition, Jordan Kret sustained permanent brain damage.

After the first action was set down for trial in April of 1977, the plaintiff voluntarily discontinued as against defendants Norton and Brookdale, and the trial proceeded solely against the attending physician Gergely on the theory that the alleged condition of the mother during labor warranted the institution of certain procedures, for example, rupture of the membranes and/or the performance of a cesarean section, which would have prevented brain damage to the infant.

In the trial of the prior action the court submitted six interrogatories to the jury. While inartfully drawn, those questions, answered in the negative by the jury, are relevant to our determination of the instant appeal. They read:

"Question number one. Was the failure to properly monitor the fetal heart rate malpractice causing injury to the infant Jordan Kret?

"Question number two. Was the failure to properly monitor the blood pressure of the mother malpractice causing injury to the infant?

"Question number three. Was the failure to rupture the membrane in the presence of a separation of the placenta malpractice causing injury to the infant Jordan Kret?

"Question number four. Was the failure to have a double set up for an immediate cesarean section if it became necessary malpractice causing injury to the infant Jordan Kret?

"Question number five. Was the failure to properly check the progress of labor malpractice causing injury to the infant Jordan Kret?

"Question number six. Was the failure to do a cesarean section when a drop in the fetal heart rate occurred malpractice causing injury to the infant?"

Accordingly, a concomitant and necessary finding with respect to the negative answers to these interrogatories was that the mother was not suffering from the pathology alleged. The jury's verdict in favor of Dr. Gergely was returned on April 22, 1977 and on June 23, 1977 judgment was entered accordingly. No appeal was taken therefrom.

On April 25, 1977, three days after the jury rendered its verdict in favor of Dr. Gergely, this action was instituted on behalf of the infant plaintiff against Brookdale and Dr. Howard J. Novick, a resident in obstetrics and gynecology who assisted in the labor and delivery rooms on the day of Jordan Kret's birth. This second suit was premised on a theory of malpractice substantially similar to that alleged in the first, namely, the improper monitoring of the mother and fetus during labor, resulting in the failure to diagnose and treat abnormal vaginal bleeding which occasioned the plaintiff's injuries.

In December, 1977 Brookdale moved *"inter alia,* to amend the trial transcript so as to indicate that plaintiffs' discontinuance against [Brookdale] was 'with prejudice' "* (see *Kret v Gergely,* 64 AD2d 692-693). By order dated March 10, 1978, Trial Term granted that motion. However, this court reversed and denied the same upon the ground that the trial court and the attorneys for the parties in the first action had not complied with the statutory protections afforded to infants whose rights to proceed against a party are to be terminated (*Kret v Gergely, supra,* p 693; see, e.g., CPLR 3217, 1207, 1208). The Court of Appeals affirmed (47 NY2d 990).

Thereafter, in March of 1981, the defendants Brookdale and Novick, having properly raised the defenses of *res judicata* and collateral estoppel in their responsive pleading (see, e.g., *Mayers v D'Agostino,* 58 NY2d 696; CPLR 3211, subd [e]), brought on the instant motion for summary judgment dismissing plaintiff's action on those grounds. In opposition, plaintiff asserted, *inter alia,* that the necessary prerequisite for application of those defenses had not been met in that while the injuries to Jordan Kret were common to the actions, the factual bases for liability were "wholly distinct from one another". In denying the motion, Special Term reasoned that: "By virtue of the appellate decisions

involving the same claim asserted in a prior action (*Kret v Gergely,* 64 AD2d 692, 693 [2d Dept], aff'd 47 NY2d 990, 991) holding that plaintiff's discontinuance of said action against Brookdale Hospital Medical Center was without prejudice, plaintiff was in effect given the right to institute and continue his present lawsuit against defendants Brookdale Hospital and Dr. Novick, notwithstanding the jury verdict against plaintiff in the prior action. Accordingly, the court finds that the doctrines of *res judicata* and collateral estoppel are inapplicable herein".

We cannot agree.

Special Term erroneously concluded that this court's prior decision in *Kret v Gergely* (64 AD2d 692, affd 47 NY2d 990, *supra*) was equivalent to an implicit disapproval of the applicability of the doctrine of collateral estoppel in another action brought on the same cause of action. What we said was only that as the statutory rights of the infant plaintiff had not been fully protected prior to the discontinuance of the initial action against the defendant hospital, any discontinuance must be "without prejudice" (*Kret v Gergely,* 64 AD2d 692, 693, *supra*). While a discontinuance without prejudice is not dispositive of the merits and therefore constitutes no bar to the institution of a second action on the same claim (see CPLR 3217, subd [c]; Siegel, New York Practice, § 298; cf. *Brown v Cleveland Trust Co., 233 NY 399*), we did not say that if the prior action had been heard in another forum, issue preclusion, as opposed to *res judicata* in the sense of claim preclusion, would not apply. Accordingly, any determination as to the future application of the principles of collateral estoppel necessarily awaited a motion to dismiss based upon such ground.

As the Court of Appeals, this court and certain scholars have observed, the terms *"res judicata"* and "collateral estoppel" have been accorded various meanings in different contexts, a situation which has led to considerable confusion with respect to the definition of and the difference between the two concepts (see *Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.],* 43 NY2d 184,

189, n 2; *Pace v Perk,* 81 AD2d 444, 460, n 2; *Brown v Lockwood,* 76 AD2d 721, 735; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.08). To facilitate the development of a more cohesive and consistent approach by both Bench and Bar, we adopt the terminology used by this court in *Brown v Lockwood (supra)* and *Pace v Perk (supra),* namely, claim preclusion and issue preclusion (see, generally, *Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], supra,* p 189, n 2).

Thus, *res judicata* in the sense of claim preclusion "involves the question of whether a plaintiff's present claim, as distinguished from discrete issues previously litigated, has been extinguished by a final adjudication in a prior proceeding" (*Brown v Lockwood, supra,* p 735; *Matter of Reilly v Reid,* 45 NY2d 24, 27), in which the parties, or those in privity with them, were the same as in the action presently before the court (see *Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], supra,* p 189, n 2; *Matter of Newsday, Inc. v Ross,* 80 AD2d 1, 4-5; *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485). Claim preclusion may result from the operation of either merger or bar. In the case of merger, an existing final judgment rendered upon the merits in a plaintiff's favor precludes further independent litigation of the adjudicated claim, the cause of action[2] being replaced by the right to bring an action upon the judgment; in the case of bar, a similar judgment in a defendant's favor extinguishes the claim, barring a subsequent action thereon (*Brown v Lockwood, supra,* p 735; see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.08; Rosenberg, Collateral Estoppel in New York,

---

**2.** As former Chief Judge BRIETEL stated in *Matter of Reilly v Reid* (45 NY2d 24, 29): "A cause of action may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery. A 'cause of action' may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought. In the sense of *res judicata* or claim preclusion, although there may be separately stated or statable causes of action, they are nevertheless based on the 'same cause of action', to which the consequential test defined in the *Schuylkill* case [*Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304] applies. Nor will differences in legal theory generally avail to permit relitigation of claims based on the same gravamen (see *Matter of Gowan v Tully,* 45 NY2d 32, 36 * * *)".

44 St. John's L Rev 165, 166; Restatement, Judgments 2d, § 17, subds [1], [2]; §§ 18, 19, 20).

In contrast, issue preclusion in the sense of collateral estoppel operates to preclude relitigation of discrete issues of law and fact determined, or necessarily determined, in a prior action or proceeding, and may arise "where the parties are the same and one is barred from relitigating an issue which was adjudicated in the prior action * * * or where the parties are not the same but nonetheless one of the parties to the subsequent action * * * is foreclosed * * * from relitigating an issue which was determined in the first action" (*Matter of American Ins. Co.* [*Messinger — Aetna Cas. & Sur. Co.*], *supra,* p 189, n 2; see, also, *Brown v Lockwood,* 76 AD2d 721, 735, *supra;* and discussions in Survey of New York Practice, 53 St. John's L Rev 169, and Rosenberg, Collateral Estoppel in New York, 44 St. John's L Rev 165, 166-167; Restatement, Judgments 2d, §§ 27, 29).[3] More specifically, for the doctrine of issue preclusion to apply, it is required: "that the issue as to which preclusion is sought be identical with the issue decided in the prior proceeding, that the *issue have been necessarily decided* in the prior proceeding, and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate the issue in the prior proceeding (*Gilberg v Barbieri,* 53 NY2d 285, 291; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71; see *B. R. De Witt, Inc. v Hall,* 19 NY2d 141). The burden of establishing the first two elements rests upon the proponent of preclusion, but as to the lack of a full and fair opportunity to contest, the burden is on the opponent (*Schwartz v Public Administrator of County of Bronx,*

---

**3.** The general rule relating to issue preclusion, as formulated in section 27 of the Restatement of Judgments, Second, states: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or on a different claim".

With respect to issue preclusion in subsequent litigation with others, section 29 of the Restatement of Judgments, Second, provides in relevant part: "A party precluded from relitigating an issue with an opposing party * * * is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue".

24 NY2d 65, 73, *supra; B. R. De Witt, Inc. v Hall,* 19 NY2d 141, 148, *supra)*" (*Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17-18; emphasis supplied).

Defendants' successful invocation of the doctrine of issue preclusion is dependent upon a finding that (1) there exists at bar an identity of issue, (2) which was necessarily determined in the prior action, and which is dispositive of the present case, and (3) the party against whom the estoppel is asserted has had a full and fair opportunity to litigate the issue sought to be precluded in this subsequent action (*Capital Tel. Co. v Pattersonville Tel. Co., supra,* pp 17-18; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71, *supra*).

In addressing the application of issue preclusion to this case, we are mindful that it constitutes a corollary to the broader doctrine of claim preclusion (*res judicata*), and is a "rule of reason and practical necessity" (*Good Health Dairy Prods. Corp. of Rochester v Emery,* 275 NY 14, 18; *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485, *supra*). Issue preclusion is founded upon policy considerations and judicial recognition of aims which seek, *inter alia,* "to conserve the resources of the courts and litigants" (*Mayers v D'Agostino,* 58 NY2d 696, 698, *supra*) and promote the finality of judgments (*Read v Sacco,* 49 AD2d 471, 473). However, this court must additionally recognize that on a "case-by-case" basis, issue preclusion "is elusive and difficult to apply" (*Commissioners of State Ins. Fund v Low,* 3 NY2d 590, 595; *Matter of Newsday, Inc. v Ross,* 80 AD2d 1, 5, *supra*), and must be approached without rigidity (see *Schwartz v Public Administrator of County of Bronx, supra,* p 73; *Read v Sacco, supra,* pp 473-474). In every case, the question of fairness in its application must be the "crowning consideration" (*Read v Sacco, supra,* p 474).

With respect to the requirement that plaintiff has had a full and fair opportunity to litigate the issue sought to be precluded in this action, those elements which comprise the " 'realities of litigation' " must be examined (*Shanley v Callanan Inds.,* 54 NY2d 52, 56, quoting *Schwartz v Public Administrator of County of Bronx, supra,* p 72; see, also, discussions in *Kossover v Trattler,* 82 AD2d 610, 622-623,

and dissenting opinion of Judge GABRIELLI in *Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.]*, *supra,* pp 198-199).

As former Justice HOPKINS of this court observed in *Read v Sacco* (*supra,* p 474): "the presence of counsel in behalf of the losing party, the regularity of the procedures * * * the adequacy of those procedures in the particular case and the limits of the jurisdiction in the first court are all significant and helpful guides".

Based upon the record before this court, it can fairly be concluded that neither the quality of plaintiff's representation in the prior Supreme Court action,[4] nor the initiative to proceed therein, were such as to call into question the application of issue preclusion. Clearly then, plaintiff has failed to sustain his burden of demonstrating that issue preclusion should not be applied because he did not have a full and fair opportunity to contest the determination now said to be controlling. Accordingly, we turn to the question of whether the defendants have sustained their burden of establishing "an identity of issue * * * necessarily * * * decided in the prior action" (*Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71, *supra*).

In *Schuylkill Fuel Corp. v Nieberg Realty Corp.* (250 NY 304, 306-307) Chief Judge CARDOZO enunciated the frequently quoted test[5] for measuring identity of issue, stating: "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first * * * It is not

---

4. Plaintiff has retained the same counsel in this second action, venue in both this action and the prior one having been laid in Supreme Court, Kings County.

5. This test is not without problems in its application. As it has been observed, the "test is circular. It makes sameness of the present and former causes of action hinge on whether 'rights or interests' established by the former judgment would be 'destroyed or impaired' in the present proceeding. But that depends in many cases on what the court now decides is the effect of the earlier judgment so far as creating rights or interests. The * * * test gives the court no help at all in deciding whether a disputed right did or did not flow from the former judgment" (Rosenberg, Collateral Estoppel in New York, 44 St. John's L Rev 165, 169; see, also *Brown v Lockwood,* 76 AD2d 721, 735).

conclusive, however, to the same extent when the two causes of action are different, not in form only * * * but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined". In sum, then, it would seem that where preclusion is sought to be invoked with respect to questions arising in a suit based upon a different cause of action, inquiry must center upon those issues and facts directly raised and actually litigated in the prior action (see Restatement, Judgments 2d, §§ 27, 29, and Comment *e* thereof; see, generally, *Gareeb v Weinstein*, 161 NJ Super 1; 2 Freeman, Judgments [5th ed], §§ 690, 691). For preclusion purposes, an issue is actually litigated when "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined" (Restatement, Judgments 2d, § 27, Comment *d*). However, it has been observed that in light of the case of *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, *supra*), "it may be said that the doctrine of [issue preclusion] no longer applies [only] to matters *actually* litigated. It may also apply to matters that were necessarily decided in the prior action although not actually litigated" (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.27, Dec., 1982 Supp, p 196; see, also, Siegel, New York Practice, § 457 *et seq.*).

Based upon, *inter alia,* a comparison of the pleadings and their amplifications in the prior and instant actions, which are essentially identical, and other materials of record in the prior action, it is our opinion that the essential prerequisites of identity of issue have been met.

While plaintiff argues that a verdict in his favor in the instant suit could be reconciled with the unfavorable verdict in the earlier action, and while he is correct in his assertion that it is feasible that in a multiparty action, several defendants could be found liable, while others not, such is not possible in the case at bar, because the essential facts upon which ultimate liability is premised were necessarily found not to exist. Since the jury in the first action necessarily determined that the alleged *abruptio placentae* maternal condition was not present, a verdict in the instant action in favor of plaintiff would certainly be inconsistent with the earlier determination against him. Al-

though issue preclusion will not apply where an earlier judgment could have proceeded on any of several distinct theories (see *O'Connor v G & R Packing Co.,* 53 NY2d 278; *Lewis v Ocean Nav. & Pier Co.,* 125 NY 341), such principle has no relevance to the facts at bar. The jurors in the original action having answered a specific set of interrogatories, clarified their verdict and thus facilitated its estoppel effect in a subsequent action (Siegel, New York Practice, § 462, p 612). Although plaintiff urges us to find that the answers to these questions are limited in application as against Dr. Gergely, it is clear to this court that the questions, though posed in reference to the attending physician's negligence, addressed issues which are common to the instant action and are dispositive thereof.

In essence, plaintiff seeks to retry his case based upon the exact facts upon which he previously relied. The only difference is the cast of defendants. He obscures this similarity by urging that the inconsistency between the testimony of Dr. Gergely at her examination before trial and her later testimony at the first trial regarding the exact time when she arrived at the hospital and began monitoring the mother, is central to the issue of malpractice on the part of each defendant named herein. However, if, as the plaintiff currently alleges and his counsel most strenuously urged upon trial of the prior action, the placental separation existed between 7:30 P.M. and 8:15 P.M. prior to Dr. Gergely's arrival, then as Dr. Mandelman, defendant's expert at the first trial testified, and as accepted medical authorities agree, such pathological process had to continue because an *abruptio placentae,* once detached, does not reattach itself (see Williams, Obstetrics [14th ed, 3d printing], p 627). Moreover, had its existence been established at trial, a presumption of continuity would have been raised (Richardson, Evidence [Prince, 10th ed], § 193). Indeed, as plaintiff by his brief concedes, if in fact, *inter alia,* it was necessarily determined in the prior action that there was no abnormal maternal bleeding and the fetus was not in distress prior to delivery, issue preclusion would apply. His assertion that the failure to properly monitor the mother, which occurred some time between her admission to the hospital at 7:30 P.M. and the deceleration in the

fetal heart rate at approximately 8:30 P.M., and the fact that Dr. Gergely changed her testimony estimating her arrival at the hospital at 8:15 P.M., rather than her being present at the time of the admission and first examination of the expectant mother, creates a new issue as to the responsibility for the alleged malpractice, is in error. To succeed on this theory of liability against any of the defendants, pursuant to counsel's theory of the case, plaintiff would be required to demonstrate that the asserted *abruptio placentae* condition existed, and that, *inter alia,* the single episode of bradycardia heard by Dr. Gergely evidenced such condition. Yet, the existence of this condition was fully litigated in the prior action. In finding that Dr. Gergely was not guilty of malpractice, the jury necessarily determined that the alleged *abruptio placentae* condition was not present, and therefore that any invasive procedures such as a cesarean section were not indicated under the circumstances. To conclude otherwise, would be to afford plaintiff the opportunity to unfairly engage in repetitive litigation of an essentially identical issue (see *Read v Sacco,* 49 AD2d 471, *supra;* cf. *Matter of Reilly v Reid,* 45 NY2d 24, 31, *supra; Matter of Newsday, Inc. v Ross,* 80 AD2d 1, 7, *supra).*

Accordingly, the order of Special Term should be reversed and defendants' motion for summary judgment dismissing the complaint granted.

THOMPSON, J. P., WEINSTEIN and BRACKEN, JJ., concur.

Order reversed, on the law, with costs, motion granted, and complaint dismissed.