OPINION OF THE COURT
Nicholas A. Clemente, J.
On December 31, 1980, a fire occurred at 453 Pacific Street, Brooklyn, a building owned by William and Margaret Rosenbluth. The building contained four residential units and two commercial units. Due to the fire, Carol Arroyo, Alice Turkel and Ken Simon, tenants in the building, were forced to vacate. On January 22, 1981, they commenced a proceeding in the Housing Part of the Civil Court seeking to impose civil penalties against the Rosenbluths for their failure to repair building violations caused by the fire and to compel the landlords to restore the property to habitability.
This proceeding resulted in a stipulation entered into on February 23, 1981 in the Civil Court (Kramer, J.), which provided that the landlord would have a period of 90 days to restore the premises occupied by each of the aforementioned tenants and the common areas to a habitable condition. The stipulation provided further that it was to survive any sale of the premises.
*951 During this period, the Rosenbluths had pending a contract for the sale of the Pacific Street premises. That contract was obviously endangered by the housing court litigation and the Rosenbluths entered into a conditional-binder agreement with Bruce Marlow for the latter to purchase the subject premises. The binder provided for Marlow to buy the property in the event the Rosenbluths’ current contract of sale terminated and a $2,250 deposit was given with the binder. Paragraph 3 of the binder stated: “Purchasers agree to enter into a standard contract for purchase of premises if the prior contract is cancelled subject to any tenancies and or summary proceedings. Purchase[r’s] Attorney shall be consulted as to any current litigation.”
Paragraph 5 stated, “Insurance proceeds to be assigned to purchasers unless required to restore premises as a result of court proceedings].”
The Rosenbluths’ prior deal to sell did, in fact, terminate and Marlow on March 5, 1981 entered into a formal contract with the Rosenbluths to purchase the Pacific Street property. This contract tracking the binder stated:
“The purchaser agrees that he shall take title subject to the existing physical condition of the premises, seller makes no representation as to said condition, with the full understanding that same are fire damaged and this sale is also subject to any and all existing violations.
“Purchaser also agrees that he shall take title subject to any existing landlord tenant litigation and particularly index number HP00217/81 Kings County.”
Thereafter the February 23, 1981 stipulation was reduced to an order dated March 30, 1981 signed by Justice Kramer. The order, inter alia, provided that it will survive any sale of the premises and will be given to the parties in recordable form and that the Rosenbluths will notify the attorney for the tenants of the name and address of any purchasers of the subject premises or parties to a contract of sale of the subject premises.
One day later, on March 31,1981, the premises were conveyed from the Rosenbluths to Marlow. The deed stated that it was “Subject to landlord tenant litigation, Index No. HP00217/81, Civil Court, Kings County and further subject to the grantors’ obligations pursuant to said litigation.”
Marlow was then served with a copy of the March 30, 1981 order. Marlow moved to intervene in the proceeding giving rise to the March 30, 1981 order and to vacate it, while the tenants sought to make Marlow a party to the proceeding and to force *952 Marlow and/or the Rosenbluths to comply with its terms. The validity of Marlow having been made a party to the Civil Court proceedings is attacked by him but in any event Marlow was made a party and the Civil Court proceedings ultimately were resolved by a decision dated August 17, 1982 (Kramer, J.) (Arroyo v Rosenbluth, 115 Misc 2d 655), in which the stipulation to restore the premises was determined to be a covenant running with the land. Nevertheless, the covenant was held unenforceable in the Civil Court because that court lacked subject matter jurisdiction and sua sponte, the court dismissed the matter with leave to pursue it in a court with general jurisdiction. Intentions to appeal from that decision were indicated by the parties but apparently not pursued. Instead, the instant action was commenced by the three tenants against Marlow by summons and verified complaint dated January 10,1984. Among the items of relief sought by the tenant plaintiffs in the complaint is specific performance of the stipulation of restoration as well as damages. Marlow joined issue by an answer dated March 13, 1984 and a month later commenced a third-party action against the Rosenbluths.
The matter is now before the court on a motion by plaintiffs for summary judgment (1) declaring defendant Marlow bound by the stipulation of February 23, 1981 and obligated to render habitable the subject premises, (2) enjoining defendant from defeating plaintiffs’ rights under the stipulation, and (3) directing defendant to restore the premises to habitable condition so that plaintiffs can reoccupy their apartments.
Defendant cross-moves for an order dismissing the complaint for failure to state a cause of action or, alternatively, for summary judgment in his favor.
Plaintiffs in support of their motion maintain that the Civil Court decision is res judicata as to the validity and enforceability of the stipulation to restore; that even if it is not res judicata the stipulation remains controlling as it is a covenant running with the land and that defendant took title fully aware of his obligations under the stipulation.
Defendant contends that the Civil Court determination is not res judicata; that it was erroneous because the stipulation was not a covenant running with the land; that he never assumed the Rosenbluths’ obligations and that the Civil Court lacked personal jurisdiction over him since he never intervened in the Civil Court action having never been served with a summons and complaint.
*953 The initial issue to be addressed is whether the Civil Court’s determination is res judicata since an affirmative answer would mandate a finding that there is in effect a covenant running with the land.
The concept of res judicata is based upon the view that society benefits from imposing a limit on litigation and that the same cause of action should not twice be brought to final determination (Ryan v New York Tel. Co., 62 NY2d 494, 500).
The corollary to res judicata is the concept of collateral and direct estoppel as it has been recognized that the doctrine of res judicata embraces many forms (Matter of Reilly v Reid, 45 NY2d 24, 27). Clarification has required orderly separation so that currently these issues are referred to in terms of claim and/or issue preclusion.
The distinction and analysis which must be applied when issues of claim and/or issue preclusion arise was summarized in Kret v Brookdale Hosp. Med. Center, 93 AD2d 449, 454-456, affd 61 NY2d 861) where the court stated the following:
“Thus, res judicata in the sense of claim preclusion ‘involves the question of whether a plaintiff’s present claim, as distinguished from discrete issues previously litigated, has been extinguished by a final adjudication in a prior proceeding’ (Brown v Lockwood, supra, p 735; Matter of Reilly v Reid, 45 NY2d 24, 27), in which the parties, or those in privity with them, were the same as in the action presently before the court (see Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], supra, p 189, n 2; Matter of Newsday, Inc. v Ross, 80 AD2d 1, 4-5; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 485). Claim preclusion may result from the operation of either merger or bar. In the case of merger, an existing final judgment rendered upon the merits in a plaintiff’s favor precludes further independent litigation of the adjudicated claim, the cause of action being replaced by the right to bring ¿n action upon the judgment; in the case of bar, a similar judgment in a defendant’s favor extinguishes the claim, barring a subsequent action thereon (Brown v Lockwood, supra, p 735; see 5 Weinstein-Korn Miller, NY Civ Prac If 5011.08; Rosenberg, Collateral Estoppel in New York, 44 St. John’s L. Rev 165, 166; Restatement [Second] of Judgments § 17 [1], [2]; §§ 18, 19, 20).
“In contrast, issue preclusion in the sense of collateral estoppel operates to preclude relitigation of discrete issues of law and fact determined, or necessarily determined, in a prior action or proceeding, and may arise ‘where the parties are the same and one is barred from relitigating an issue which was adjudicated *954 in the prior action * * * or where the parties are not the same but nonetheless one of the parties to the subsequent action * * * is foreclosed * * * from relitigating an issue which was determined in the first action’ (Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], supra, p 189, n 2; see, also, Brown v Lockwood, 76 AD2d 721, 735, supra; and discussions in Survey of New York Practice, 53 St. John’s L. Rev 169, and Rosenberg, Collateral Estoppel in New York, 44 St. John’s L. Rev 165,166-167; Restatement, Judgments 2d, §§ 27, 29). More specifically, for the doctrine of issue preclusion to apply, it is required: ‘that the issue as to which preclusion is sought be identical with the issue decided in the prior proceeding, that the issue have been necessarily decided in the prior proceeding, and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate the issue in the prior proceeding (Gilberg v Barbieri, 53 NY2d 285, 291; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71; see B.R. DeWitt, Inc. v Hall, 19 NY2d 141). The burden of establishing the first two elements rests upon the proponent of preclusion, but as to the lack of a full and fair opportunity to contest, the burden is on the opponent (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 73, supra; B.R. DeWitt, Inc. v Hall, 19 NY2d 141,148, supra)’ (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 17-18; emphasis supplied).”
Examination of the res judicata estoppel issue herein shows that it is actually a question of issue preclusion since the claim preclusion factors of merger and bar are clearly not applicable.
In my view, Marlow is not precluded but rather is entitled to relitigate the validity and status of whether or not the stipulation constituted a covenant running with the land. In reaching this conclusion the determinative factor is whether the Civil Court had to decide if the stipulation was a covenant which ran with the land in order to reach its decision.
It is evident that there was no need to reach this issue and that it was not the operative one. That is, when the Civil Court decided that it lacked subject matter jurisdiction to enforce the stipulation, the determination that it was, in fact, a covenant running with the land was of no relevance and was a conclusion that the Civil Court need never have reached.[1] Whatever conclusion Civil Court made about the covenant would not matter *955 since everything else became of no moment upon its finding that it lacked subject matter jurisdiction to enforce it. Thus, to consider the covenant as running with the land based upon the decision of the Civil Court would result in the anomalous result of following the decision of a court which itself declared that it lacked jurisdiction of the matter (cf. Norton v Southern Ry. Co., 138 Misc 784). Accordingly, I conclude that Marlow may relitigate the effect of the stipulation to repair the apartments.
The issue that emerges revolves around the plaintiffs’ rights to force Marlow, the present landlord, to repair his fire-damaged building and abide by a stipulation entered into by his predecessor. Analysis of this issue must commence with consideration of what was stated by the parties in Civil Court on February 23, 1981 when the stipulation was recorded before Justice Kramer.
At the proceeding, Justice Kramer stated the terms of stipulation. He indicated that the Rosenbluths would have a period of 90 days to restore the premises and that the Rosenbluths were to give notice to the attorney for the tenants 30 days before their apartments were ready for occupancy. Justice Kramer then placed on the record the following: “The tenants shall return to actual reasonable occupancy within two weeks thereafter — two weeks after the date set forth as the date of availability so that there will be a notice thirty days before actual availability. After the date of actual availability the two weeks shall run — so there will be a total six week period between the notice and the date of surrender in the event that possession is offered and not taken advantage of.”
The foregoing indicates, especially the phrase, “in the event that possession is offered and not taken advantage of” that at the time the stipulation was entered into plaintiffs could not be considered tenants of 453 Pacific Street. The stipulation makes clear that the Rosenbluths were to restore the premises after which the plaintiffs would then decide whether to become tenants. The stipulation leaves no doubt that plaintiffs were under no obligation — as tenants normally would be — to resume paying rent upon restoration of the building. It is also obvious that insofar as plaintiffs are concerned vis-a-vis Marlow, before they could compel him as a landlord to do anything they would have to be deemed his tenants.
As to whether plaintiffs are Marlow’s tenants, he contends without contravention that the plaintiffs’ apartments are all free of any rent control or rent stabilization regulations. He maintains further that only Turkel had a lease pursuant to which she was given notice of cancellation while Simon and *956 Arroyo were month-to-month tenants, whose tenancies had also been terminated.[2] The matter thus narrows to an issue of whether tenants who have not been living in their apartments since December 31,1980 — the day of the fire — who can point to nothing which gives them a continued right to occupy their apartments and who effectively acknowledged at the time the stipulation was recorded that they might not even accept the apartments upon restoration, may successfully force the current owner of the building to restore it to its prefire state based upon a stipulation entered into by a predecessor of the current owner.
At common law, a tenant lessee was held obligated to pay rent pursuant to the terms of his lease even if the premises had been destroyed (Vann v Rouse, 94 NY 401, 405). Real Property Law § 227 seeks to release tenants from the harsh effects of this rule by permitting tenants to surrender fire-damaged premises. In any event and notwithstanding any requirement to pay rent, it is clear that “In the absence of covenants in the lease requiring it to be done, no obligation rests upon either the landlord or tenant to rebuild. (Rogers v Atlantic Gulf & Pacific Co., 213 NY 246)” (Zimmer v Diamond, 268 App Div 539, 541). Even the emergency rent laws have been held not to impose an obligation upon landlords to reconstruct buildings totally destroyed by fire for the benefit of their former tenants (Airway Supermarkets v Santone, 277 App Div 722, 725, lv denied 278 App Div 765).
To maintain that the plaintiffs had constructive possession of the premises because there was only a partial eviction caused by the fire would necessitate an imposition of a fiction not supported by the facts. This is especially true when it appears that it would cost approximately $60,000 to repair a building sold for $43,000. Based on the foregoing, it is apparent that Marlow has no duty to restore the subject premises for the plaintiffs as tenants.
What remains for consideration, however, is whether Marlow is bound by Rosenbluths’ obligations under the stipulation by taking title “subject to” it. In my view, he is not obligated to fulfill the stipulation.
There can, of course, be no question that the plaintiffs could enforce the stipulation against the Rosenbluths despite its *957 vagueness and indefiniteness. This would follow merely as a matter of enforcement of rights which flow from a contract. This contractual right does not, however, bind Marlow. If, of course, Marlow had made a contract with the Rosenbluths to restore the apartments, the plaintiffs would be its third-party beneficiaries and they would have a right to seek its benefits. Marlow, however, never affirmatively undertook to do anything — he merely took title “subject to the grantors’ obligations pursuant to said litigation”.
Thus, as Civil Court realized, Marlow could be held obligated to restore only if the Rosenbluths’ stipulation constituted a covenant running with the land. For a covenant to run with the land, it must be shown that:
“(1) The original grantee and grantor must have intended that the covenant run with the land.
“(2) There must exist ‘privity of estate’ between the party claiming the benefit of the covenant and the right to enforce it and the party upon whom the burden of the covenant is to be imposed.
“(3) The covenant must be deemed to ‘touch and concern’ the land with which it runs. (See, also, Nicholson v 300 Broadway Realty Corp., supra; Restatement Property, §§ 531, 534, 537, 538; 13 NY Jur, Covenants and Restrictions, § 8, p 248.)” (Eagle Enters, v Gross, 39 NY2d 505, 508.)
There is, of course, no doubt that there is privity of estate when we are concerned with enforcement of a covenant between a lessor and lessee or their successors (Mygatt v Coe, 124 NY 212, 220). The phrase has, however, come to have various meanings. As stated in Clark, Covenants and Interests Running With Land (2d ed, at 111), “Turning now to ‘privity of estate’, we shall see that the term is used by different courts in three distinct senses; (1) succession to the estate of one of the parties to the covenant, which, it is submitted, is the only proper sense; (2) succession of estate also between covenantor and covenantee, an entirely unjustifiable meaning; and (3) mutual and simultaneous interests of the parties in the same land, a sense which is unjustified as a definition of this requirement, but which expresses a restriction perhaps justifiable from the standpoint of public policy.”
What is apparent is that one seeking to enforce a covenant which would ordinarily be deemed to run with the land can do so only if that person has an estate or interest in the land sought to be benefited. In my view, plaintiffs lack this element because as previously indicated they are no longer tenants. Therefore, *958 I find under the facts of this case that the Rosenbluths’ undertakings and Marlow’s taking subject to it do not rise to the level of a covenant running with the land since the beneficiaries of the covenant lacked an interest in the land which was to be benefited by the covenant (Eagle Enters, v Gross, supra; Neponsit Prop. Owners’ Assn. v Emigrant Indus. Sav. Bank, 278 NY 248; Clark, Covenants and Interests Running With Land, id.). Accordingly, Marlow is under no duty to restore the subject building.
This court is, of course, cognizant of the dilemma that was presented to the Civil Court in that the Rosenbluths, under oath, consented to perform an act and later adverted to the substance of this oath in a deed granted to Marlow. It must be noted, however, that had the Rosenbluths been aware that the Civil Court believed that it lacked jurisdiction of the matter, they doubtless would never have entered into the stipulation.
On a practical level, it is apparent that even if the stipulation entered into in open court could be deemed a covenant which runs with the land, the plaintiffs would still be rewarded with a meaningless victory. That is, had the plaintiffs been deemed to have a continuing right to their former apartments, there would still be nothing to prevent Marlow from now terminating their tenancies upon 30 days’ written notice.
Plaintiffs’ motion is denied and defendant’s cross motion for summary judgment is granted. Plaintiffs’ complaint should be dismissed.

. In fact, a reading of Justice Kramer’s opinion indicates that he reached his decision on the issue of the covenant as the necessary first step in his scholarly analysis of the action, which led to his determination of no jurisdiction.

. It must be pointed out that it is questionable whether the notice to terminate provisions found in Real Property Law §§ 228 and 232-a, requiring a landlord who wishes to terminate a tenancy to serve a notice on the tenant requesting him to remove from the premises, would apply here. This follows from the fact that the statutory provisions speak of requiring the tenant to “remove” from the premises. Here the tenants have certainly already removed from the premises.